### DORSEY v. MILLER, and vice versa.

1. A justice's court has no jurisdiction of an action of tort unless the alleged wrong consisted of injuring or damaging personal property belonging to the plaintiff. Such a court, therefore, can not lawfully entertain or try a suit against a defendant for fraudulently removing property subject to a lien held by the plaintiff, or for conspiring with another so to do.

2. There was no error in setting aside the verdict complained of in the petition for certiorari, as the same was unsupported by evidence and the magistrate's court was without jurisdiction; but the superior court erred in not rendering a final judgment in favor of the plaintiff in certiorari.

Submitted June 15,—Decided July 22, 1898.

Certiorari.. Before Judge Kimsey. White superior court.. October term, 1897.

W. F. Dorsey brought suit against J. M. Miller in a justice's court; the summons requiring the defendant to answer in an action for damages, for that defendant colluded with one Jarrell to defraud plaintiff out of the sum of $30; that plaintiff as landlord rented to Jarrell certain land in 1896, on which he raised a crop; that by virtue of the relation of landlord plaintiff had a lien on the crop so raised, for rent; that Miller, in order to defraud plaintiff out of his rent, combined and confederated with Jarrell, and aided and abetted and took possession of the crop of said Jarrell so raised on the land of plaintiff and on which plaintiff had a lien for his rent and advances, and placed

the same beyond the reach of the plaintiff or the officers of the law, and thereby impaired and destroyed plaintiff's right to collect his rents, well knowing at the time that plaintiff's lien existed. It is further set forth in a bill of particulars, that by said act defendant destroyed plaintiff's lien on about 50 bushels of corn and 2 bales of cotton, 15 bushels of cottonseed, 10 bushels of peas, 300 pounds of seed-cotton, a cow and calf, etc., to plaintiff's damage $30. Two other items of damage are claimed, one being for $2.75 costs paid out " to try to enforce " plaintiff's lien, which was prevented by the fraudulent act of defendant, and $1.22 " interest on the principal amount lost as aforesaid, since December 15, 1896, to this date," July 2, 1897. A trial in the justice's court resulted in a verdict for $25.56 in favor of the plaintiff. Defendant carried the case to the superior court on certiorari; the petition therefor alleging that the summons and bill of particulars did not show a legal cause of action, and that the verdict was contrary to law and evidence. On the hearing plaintiff's counsel moved for a judgment overruling the certiorari, on the ground that the answer of the justice contained no verdict or judgment, and that the allegations in the petition for certiorari and the assignments of error were not verified by the justice's answer. There were no exceptions to the justice's answer. In response to the plaintiff's motion, defendant Miller contended that the answer of the justice was insufficient, and moved that the court, if it considered the answer insufficient, send the case back and order the magistrate to answer over. Defendant also moved that the court make a final disposition of the case, on the grounds, that the justice's court had no jurisdiction, the suit not being one for damage to personal property nor on any contract in which said court had jurisdiction, and that no cause of action was set out in the summons or bill of particulars annexed thereto. Each of these motions was overruled. The ruling on the first motion is assigned as error by plaintiff in his bill of exceptions, and the other two rulings are assigned as error by defendant in a cross-bill of exceptions. The court sustained the certiorari and granted a new trial, and plaintiff excepted. The evidence was as follows.

Plaintiff rented land to Jarrell for 1896, and furnished him everything that he had and used, and was damaged by defendant, by furnishing a team to Jarrell to haul the cotton or part of it to the gin and haul the cotton from the gin and deposit it at defendant's between his stables, and by having to go after a bailiff to hunt the cotton, and $1 expenses to foreclose plaintiff's landlord lien. He was put to considerable expense and cost; he rode 100 miles to get to the law ground in time for the trial. He paid $5.50 to have some writing done. Defendant had Jarrell hired, and that was the reason part of the cotton was lost. Plaintiff got all of the cotton owing to him and all of his rent corn, but Jarrell did not pay all of the corn that he owed plaintiff for supplies. Defendant was heard to say that if he had just thought to give Jarrell the key, the bailiff would have had a hard time getting the cotton, and that he would furnish Jarrell the money to pay his debt to plaintiff and take the cotton for it. Two letters were introduced, addressed to the plaintiff, one from Jarrell, dated October 13, 1896; the other from defendant, dated April 22, 1897. The first is as follows: "I will sell you my entire interest of my cotton at the market price. I will let you have the amount of fodder I have taken off your farm at $1 per hundred, if you think the cotton won't pay you. I only carried some fodder and shucks up to Miller's for shelter, and let John Meadors have 140 bundles to get me some pants cloth. All this you can get back if you want it. I am willing to pay you all I owe you in anything I have got. I don't mean to beat you in any way. Written by J. M. Miller through my request. I want you to come up and we will settle satisfactorily, or I will come down if you want me to. I don't want any difficulty. If you think best to go to law, I can't help it. Respectfully, William Jarrell. P. S. If you don't want my cotton, fodder and corn, I will pay you the cash for what I owe you and turn over the cotton and corn to the party that advances me the cash. I have the cash offered me if you will do this. Wm. J." The other states: "If you will sue William Jarrell and run a garnishee on me, I might be able to get something out of him on your debt. You can garnishee before you get judgment just as quick as you sue him."

*J. W. H. Underwood* and *J. L. Oakes,* for plaintiff.

*M. G. Boyd, O. J. Lilly* and *G. S. Kytle,* for defendant.

LITTLE, J.　The only question of law which arises in this case is, whether a justice's court has jurisdiction in an action to recover .damages against one who by collusive and fraudulent conduct damaged the plaintiff, in a sum less than one hundred dollars, by destroying the lien which plaintiff held as landlord on the crops of his tenant, etc.

1. By paragraph 2, section 7, article 6 of the constitution, justices of the peace are given jurisdiction in all civil actions arising ex contractu, and in cases of injuries or damages to personal property, when the principal sum does not exceed one hundred dollars.　Even a casual reading of this section of the constitution is sufficient to determine that a justice's court has no jurisdiction in cases of this character, nor in any other case where damages sounding in tort are sought to be recovered, save only where the injury or damage is to personal property. We are aware that in the case of *James* v. *Smith,* 62 *Ga.* 345, Jackson, J., delivering the opinion of the court, used language which would seem to intimate that justices of the peace, under the paragraph of the constitution above quoted, had jurisdiction to entertain actions in trover instituted to recover property less in value than one hundred dollars.　An examination of that case, however, will show that no such ruling was made.　The action there was on an account for the sum of fifty-two dollars and fifty cents, being the value of a bale of cotton which it was alleged James had converted and sold.　On the trial in the justice's court, the defendant moved to dismiss the case, on the ground that the facts made it an action of trover, and that the justice's court had no jurisdiction in cases of trover.　The justice refused to dismiss, and a certiorari was sued out to the superior court, which sustained the certiorari, ruling that the justice's court had no jurisdiction in actions of trover, but refused to pass final judgment in the case, and sent it back with direction that it had no jurisdiction in cases of trover, but to cause the action to be amended if possible in such a manner as to proceed for money had and received.　To the refusal of the court

to pass final judgment in the action, James excepted on the ground that the court erred in sending the case back and in not making a final disposition of it; and the question made in that record was, should the superior court have finally disposed of the case? It was held by this court that the action was for money had and received; that the facts were all in, and that there was nothing to show that they would be varied; that the law of the case was plain; that no further trial in the justice's court was needed, and that the court erred in not making a final disposition of the case. It is true that the honored and learned Justice, delivering the opinion of the court, went further and said, " Suppose the case had been trover, did not the justice's court have jurisdiction?" and cited an authority for the proposition that the action of trover is an action for damages to personal property; but the case was decided on the point that the suit was brought to recover the value of one bale of cotton, and on the further principle that the plaintiff had the right to waive the tort and sue for the value of the property converted. So that that case can not be held as authority that justices of the peace have jurisdiction to entertain suits sounding in tort other than for damages to personal property. If the words of the constitution above quoted needed any explanation, the cases of *Williams* v. *Sulter*, 76 *Ga*. 355, and *White Star Line Steamboat Co.* v. *County of Gordon*, 81 *Ga*. 47, are sufficient to show that in the opinion of this court the jurisdiction of justices of the peace, in cases other than those which arise ex contractu, is limited to actions which are brought to recover damages for injuries to personal property. We do not deem it necessary to do more than call attention to the plain language of the constitution. The action in the present case was brought to recover damages which the plaintiff alleges he sustained in consequence of the wrongful and fraudulent and collusive conduct of the defendant in taking possession of the crop of his tenant upon which the plaintiff had a lien. Such an action can not lawfully be tried in a justice's court.

2. The court did right in setting aside the verdict which had been rendered for the plaintiff in the justice's court; but as that court was without jurisdiction to hear and determine the case,

the superior court erred in not rendering a final judgment in favor of the plaintiff in certiorari, who was the defendant in the justice's court, and who by cross-bill assigned error· on the refusal of the court to so render a final judgment in the case.

*Judgment on the main bill of exceptions affirmed. On the cross-bill, reversed. All the Justices concurring.*