Hoyle et. al. vs. Jones, adm'r.

PETER F. HOYLE, JOHN W. NESBIT, THOMAS R. HOYLE, ANDREW H. HOYLE, and SARAH E. HARDMAN, plaintiffs in error, vs. THOMAS H. JONES, administrator of MARGARET H. JONES, deceased, defendant in error.

[1] A bequest to a woman, "and to the children of her body," creates a joint estate, and not an estate tail.

[2] The concealment of a right, by one whose duty it is to disclose it, prevents the running of the statute of limitations in favor of the party in default. It is a legal fraud.

[3] It was not error in this case, to allow interest on the annual hire as it accrued.

In Equity, in DeKalb Superior Court. Bill, &c. Tried before Judge WARNER. October Term, 1866.

Peter Fite, of North Carolina, died there in 1817, leaving a will, the sixth item of which was as follows : " I will and bequeath to my daughter, Catherine Hoyle, and to the children of her body, a negro woman named Polly, with said Polly's offspring."

Catherine Hoyle was the wife of Adam Hoyle, who was one of the executors to this will. Catherine died a few days after her father, the testator, leaving several children, all of whom were in life at the making of the will, as well as at the death of the testator. Among them was Margaret H., subsequently the wife of Jones, the defendant in error. She was born in 1810, married Jones in 1828, and died in 1837. Her marriage took place in Gwinnett county, Georgia, whither her father, Adam Hoyle, had removed from North Carolina, shortly before ; and where she continued to reside until her death. Neither she nor her husband, so far as appears, ever knew, during her life time, of the provisions of Peter Fite's will, or anything touching her rights under it ; nor did Jones subsequently acquire this knowledge until shortly before the present litigation commenced. It was admitted by Adam Hoyle, in his answer, that he never communicated such knowledge to either of them.

Soon after the death of Peter Fite, in 1817, Adam Hoyle, with the consent of his co-executor, took possession of the woman Polly, claiming her, under the will, as his own pro-

perty, in right of his wife, Catharine, being advised by counsel that she was his absolutely, and that his children had no interest in her. When he removed to Georgia, he brought Polly with him, and continued to hold her as his own in the county where Jones and wife lived. She bore many children, and these he disposed of in various ways. He sold some of them to strangers, and some, together with Polly herself, to his son, Peter F., one of the plaintiff's in error. He gave off others to the other plaintiff's in error, who are his sons, his son-in-law, and his daughter. These transfers took place at various periods, extending from 1841 to 1853, inclusive; and those to whom he sold, or gave the negroes, held them thenceforth as their own property. They increased, from time to time, until the descendants of Polly became about forty in number.

In December 1860, Jones applied for, and obtained, temporary letters of administration upon the estate of his deceased wife, Margaret H. In February following, he obtained permanent letters. Between these two periods he filed his bill, as administrator, against the plaintiffs in error, and Adam Hoyle, praying for a partition of the negroes in their possession, (claiming one-sixth thereof,) and for a full and fair accounting for hire, with interest thereon, and also for general relief.

The cause came on for trial at October Term, 1866, when Adam Hoyle being dead, and his estate unrepresented, it was agreed by counsel, that the trial proceed as though he were in life, his answer to be read in evidence but no decree to be taken against him.

The answers and some other evidence being before the jury, the Court charged them as follows:

*On the Will.*—That it did not create an estate tail, but a joint estate in Catharine Hoyle and her children.

*On the Statute of Limitations.*—That if Mrs. Jones, the complainants intestate, was an infant, under twenty-one years of age, at the death of Peter Fite, and became a feme covert before arriving at twenty-one years of age, and

before the cause of action accrued, and before the statute commenced to run against her, and died during her coverture, the statute of limitations did not bar the complainant's right to recover—that after her death the statute did not run until there was a legal representative of her estate capable of instituting suit; that the act of 1856, requiring administration on decendant's estates to be taken out within five years, did not have any retroactive effect, but operated prospectively, to-wit, from the 1st of June, 1856, and that the complainant had five years from that day to take out administration, before his right to do so would be barred by the provisions of that act. Also, that if the defendants and those under whom they claimed, had been guilty of a fraudulent concealment of the complainant's intestates right to the property in controversy, by which the complainant, or his intestate, had been debarred or deterred from commencing suit for the property, the statute of limitations would not commence to run only from the time of the discovery of such fraud.

*On interest upon hire.*—That if the jury found any hire to be due, they might allow interest upon it at seven per cent. per annum, from the time it became due; that it was due from the expiration of each year; and that the interest allowed should not be designated in the verdict as interest, but be included in the general amount found against each defendant.

*On the effect of emancipation.*—That this, if the defendants were *bona fide* claimants, and not wrong doers, was the same as if the property had died or been destroyed, and might be considered by the jury in fixing the amount of their verdict; that the bringing of the action was a demand by complainant for his interest in the negroes, and if the defendant's refused to account for his interest, and held the same not in good faith, then the subsequent emancipation of the negroes was no valid reason why they should not be required to account for the value.

These charges are each assigned as error, the first three

generally, and the last as being inapplicable to a bill praying that the negroes be divided, and not praying for any account of their value.

CANDLER and CALHOUN, for plaintiff's in error.

HAMMOND & SON, and BLECKLEY, for defendant.

[1] Under the sixth item of Peter Fite's will, Catharine Hoyle and her children took a joint estate; no estate tail was created thereby. *Jackson vs. Coggin* 29 *Ga. R.* 403.

[2] The Code, Sec. 2872 says: "If the defendant, or those under whom he claims, has been guilty of a fraud by which the plaintiff has been debarred or deterred from his action, the period of limitation shall run only from the time of the discovery of the fraud;" and see also Sec. 2647, where similar language is used. Here all the defendant's held under Adam Hoyle; he was the executor of Peter Fite's will; it was his duty to administer the estate according to the terms of the will; he should have paid to Mrs. Jones what was due her under that will; he was her trustee, and bound to act in good faith. Instead of doing this, he set up title to this property in himself; never informed his children of their rights under the will; and complainant never learned, until a short time before instituting proceedings in this case, that the will gave anything to Catharine Hoyle's children. This concealment on the part of Adam Hoyle, however good his intentions may have been, is in law a fraud, and such as will prevent the running of the statute in his favor, or those claiming under him, against his *cestui que trust*. This view disposes of several questions made in this case. It is unnecessary to decide anything as to the disability of Mrs. Jones to sue, for under the view which we take of the case, if she had never married, and were in life at this time, she would have a right to maintain this bill; her right to recover depends, not on the disability to sue, but on the fraudulent concealment, by this trustee from his *cestui que trust*, of a knowl-

edge of her rights.  It was his duty to inform her, and assert her rights ; instead of which, he concealed from her a knowledge of the fact that she had any rights at all; and appropriated to his own use the property, to which she was entitled under the will of her grand-father.  *See Wellborn vs. Rogers*, 24 *Ga. R.* 579 to 581.

[3]  We think the Court properly instructed the jury, that complainant was entitled to interest on the hire, to be calculated on the amount of the hire due at the end of each year. In *Huff & Chambers vs. McDonald*, 22 *Ga. R.* 131, the Court decides, that if one joint tenant, or tenant in common receives and uses more than his share of the joint effects, he is liable to account for at least as much as the legal interest on the amount so received.  In *Robinson, et al, vs. The Bank of Darien, &c.* 18 *Ga. R.* 107, Lumpkin, J. says : " The right of the creditors to the rents which accrued on the real estate, during the period the lands were controlled by the Central Bank, would seem to us to be indisputable, upon the plainest principles of justice.  And that *interest* should be paid on the proceeds of the real estate sold in Georgia, *and upon the annual rents*, from the times these sums were respectively received, would seem to follow as a necessary consequence." See, also, *Doonan vs. Mitchell*, 26 *Ga. R.* 479.  Certainly the rule that hire is payable *annually* is one of which defendant's cannot complain; and when due and unpaid it should bear interest.  This is equitable and just.

The view which we have taken renders it unnecessary to say anything upon the charge of the Court below upon the effects of emancipation in this case, except that we see no error of which the *defendants* can complain.  It certainly was as favorable to them as they could legally require.

Judgment affirmed.