## BLOCKER *v.* BOSWELL.

1. Under the constitution of this State (art. 6, sec. 7, par. 2, Civil Code, § 5856), defining and limiting the jurisdiction of justices of the peace, a justice's court has no jurisdiction in actions of trover. This question was not involved in *James* v. *Smith*, 62 *Ga.* 345, and consequently what was there said concerning it was obiter.
2. This case turns on the ruling above announced, and, in view thereof, the presiding judge erred in sustaining the certiorari.

Submitted October 12, — Decided November 8, 1899.

Certiorari. Before Judge Hart. Greene superior court. February term, 1899.

*George A. Merritt,* for plaintiff in error.
*James B. Park Jr.,* contra.

Lewis, J.  Boswell brought suit in trover against Blocker in a justice's court, for the purpose of recovering certain personal property.  An appeal was had to a jury in that court, and a verdict was rendered for the defendant; whereupon plaintiff brought his petition for certiorari in Greene superior court, alleging, among other things, that the verdict was contrary to law and the evidence.  The judge sustained the certiorari, and granted petitioner a new trial.  The defendant in certiorari filed his bill of exceptions, alleging error in this judgment of the court.

The controlling question which arises in this case is whether or not, under the present constitution of this State, a justice's court has jurisdiction to try an action in trover.  That constitution declares:  "Justices of the peace shall have jurisdiction in all civil cases arising *ex contractu*, and in cases of injuries or damages to personal property, when the principal sum does not exceed one hundred dollars."  This provision was evidently intended to define and limit the jurisdiction of a justice's court in civil actions.  The simple question for consideration, then, is whether, by a fair construction of these words in the constitution, an action of trover is embraced in the class of cases mentioned.  Obviously such an action is not a case arising *ex contractu*, but it is an action *ex delicto* founded upon a tort committed by a direct invasion of the owner's legal right to the possession and use of his chattels.  It is based upon the title of the plaintiff to the property sued for, and upon the wrongful conversion thereof by the defendant, and is, strictly speaking, an action *ex delicto*.  We think it is equally clear that such a suit can not properly be classified among "cases of injuries or damages to personal property."  The words "injuries or damages" were evidently intended to be synonymous; and, when applied to property, they mean some physical injury to the property itself, some trespass upon it, by virtue of which its value has become diminished or destroyed.  Conversion implies no such injury.  An action of trover, therefore, has no reference to any injury or damage which the property itself may have sustained.  Indeed, after its conversion, it may actually be enhanced in value by the wrong-doer; yet even if this

were done at his expense, it would have no effect upon the owner's right to recover back his property by trover. On the other hand, if the personalty, while in the unlawful possession of the defendant, should be materially injured or damaged by him, and the plaintiff should discover this fact after recovering the property itself by an action of trover, we see no reason why he would not have the right to institute another and an independent action for damages resulting from such physical injuries. His recovery in trover would be no bar to such an action, for the simple reason that the two causes of complaint would be entirely distinct and separate. It would be just as reasonable to contend that a suit in ejectment, or an ordinary complaint for the recovery of land, could be properly designated as an action for injuries or damages done the freehold, as to say that a suit in trover is an action for damages done to personalty. The main issues in an action of ejectment and of trover are practically the same; both involving title to the property in the plaintiff, and a wrongful possession thereof by the defendant. Applying, then, the ordinary and natural meaning of the words employed in the constitution, they necessarily deprive a justice's court of jurisdiction over any civil case arising *ex delicto*, except in suits for injuries or damages to personal property; and trover not being an action to recover such damages, it follows that a justice's court has no jurisdiction in such a case.

It is a cardinal rule, in the construction of language, that words are presumed to be employed in their natural and ordinary meaning. This rule almost invariably is a legal and safe guide in the construction of the constitution of a State, as well as all other written instruments, whether relating to legislation or contracts. 6 Am. & Eng. Enc. L. (2d ed.) 924. The correct doctrine is also announced on page 925 of the same work, that "where a word has acquired a fixed technical meaning in legal and constitutional history, it will be presumed to have been employed in that sense in a written constitution." In an able brief and argument before us, filed on this question by counsel in another case involving the same question, it is contended, in effect, that the words of the constitution we have

been considering, construed in the light of the legal history of this State bearing on the subject, have a technical meaning, and were intended to embrace an action of trover. In this connection our attention has been called to the stenographic report of the proceedings of the constitutional convention of 1877, a printed copy of which is before us. In sec. 7, par. 2 of the report, page 163, appears the report of the judiciary committee on the subject. This committee recommended to the convention that the jurisdiction of a justice's court be limited to civil actions arising *ex contractu.* When this particular clause in the report was before the convention, it seems three amendments were offered to it; one to strike it out, and leave the matter of the jurisdiction of a justice's court entirely with the legislature. Another was to retain the broad jurisdiction conferred by the constitution of 1868, which gave a justice's court jurisdiction over all cases without any exceptions as to actions *ex delicto.* The third amendment, introduced by Mr. Moore, was to add to the report of the committee the words, "and in cases of trespass or injuries to personalty." The last amendment finally prevailed. We see nothing in the argument of Mr. Moore, in the stenographic report referred to by counsel, at all in conflict with our views as to the meaning of the words, "injuries or damages to personal property." We quote the following from his speech, explaining what would be the result if the report of the committee were adopted without his proposed amendment: "The slightest damage to personal property would have to go to the superior court. The amendment is to provide that when your ox or cow has been killed by the railroad, you can go to a justice of the peace and have redress, and not be forced to go to the superior court." Hence, if the views of any debater in a deliberative body, as to the meaning of a measure which he advocates, should have special weight with the courts in construing the words of the measure finally adopted, then we may gather from the language above quoted a very clear idea of what is meant by the words, "injuries to personal property." From the illustration used in reference to the killing of stock, physical injury to the property was in the mind of the speaker, and he evidently was

not contemplating a tort which did not involve any direct injury to the property itself. It seems, however, from this same stenographic report that a day or two after the adoption of this amendment offered by Mr. Moore, it was reconsidered by the convention, and during its reconsideration another effort was made by members not to restrict the jurisdiction of a justice's court to such narrow limits, and also to provide for appeals of cases in that court. The result of this reconsideration was the final adoption of the clause that now appears in the constitution, which it will be noted embodies the appeal feature. But a significant fact is that, as finally adopted, the word "trespass," used in the original amendment, was omitted, and the words "injuries or damages to personalty" employed. We do not mean to say that even if the word "trespass" had remained, it would have given a justice's court jurisdiction in trover cases; but a wrongful conversion could be more properly called a trespass upon property than it could be designated as an injury to property. Hence we think it more reasonable to presume the constitutional convention of 1877 acted advisedly, instead of inadvertently as contended, by omitting the word "trespass," and substituting the words finally adopted. We therefore conclude that there was nothing in the proceedings before the constitutional convention of 1877 authorizing the view that the members of that convention entertained any different idea with reference to the meaning of the words they finally adopted on this subject than what is herein expressed.

We are not aware of any legislation in the history of this State which would authorize the conclusion that an action of trover was ever treated or classified as a case involving injuries to personal property. Prior to the constitution of 1868, there appears to have been no constitutional restriction upon the jurisdiction of a justice's court in civil actions, but that matter was regulated by legislative enactment. By the act of 1810 (Cobb's Dig. 638) the jurisdiction of a justice's court in civil cases was confined to suits on liquidated demands or accounts for a sum not exceeding thirty dollars; but no jurisdiction was by that act given to entertain any action involving a trespass upon or an injury to the person or property of a plaintiff. By the act of

March 5, 1856, the jurisdiction of a justice's court was extended to the sum of fifty dollars principal, but it was still limited to actions ex contractu, that is, to "promissory notes, accounts, and all other evidences of debts." See Cobb's Statutes and Forms, 277 ; Acts 1855–6, p. 254. Under the act of December 9, 1861 (Acts 1861, p. 63), a justice's court of this State was given power to try all cases of trespass upon personal property where the amount claimed did not exceed the jurisdiction of the court. Thus it seems that the jurisdiction of a justice's court as to civil actions was regulated entirely by the legislature until the adoption of the constitution of 1868. In that constitution they were given jurisdiction "in all civil cases where the principal sum claimed does not exceed one hundred dollars." A broader latitude in civil cases was thus given these courts by the constitution of 1868 than was ever conferred upon them before by statute. The evident purpose of the constitution of 1877 was to restrict this jurisdiction as to actions *ex delicto*, and confine it only to such cases as involved injuries to personal property. It is a significant fact that the words of the present constitution not only have no reference to a wrongful conversion of personal property, but the words "trespass on personal property," used in the act of 1861, are not even employed. Our attention has been called to the further fact that in our codes, beginning with that of 1863, the action of trover has been embodied by the codifiers in chapters headed, "Of injuries to personalty generally." The particular heading given by the codifiers to the various chapters of the code can not be considered as part of the legislation of this State. Were we to treat it as such, it would unquestionably give rise to great confusion, render uncertain the law, and nullify some previous adjudications of this court. The codifiers undertook to give in general terms the subject-matters of different chapters of the code, but in many of these chapters will be found a treatment of kindred subjects which would not fall strictly under the general and concise terms used in the caption of the chapter. In fact, it would be next to impossible to form a comprehensive and condensed code of laws without such occasional occurrences in its arrangement and classification.

It was further contended that the statute of limitations, as embodied in the Civil Code, § 3899, on the subject of injuries to personalty, was intended to include an action of trover; for it is insisted this court has recognized, by its decisions, that a suit in trover is barred in four years after the right of action accrues, and that it must have been based upon this provision in the code, and, if so, this court has recognized that an action of trover is properly classified as a suit for injuries to personalty. It is true this court has, in a few of its decisions, indicated that a suit in trover is barred after the lapse of four years from the time the right of action accrues. The earlier decisions on this subject, before the adoption of the first code, were evidently based upon the statute itself. By the act of 1767 (Cobb's Dig. 561–2) it was expressly declared that actions of trespass, detinue, actions of trover, and replevin shall be brought within three years. By the act of December 7, 1805 (Cobb's Dig. 563–4), the limitation for actions of trespass, including in express terms detinue and trover, was extended to a period of four years. Under the act of March 6, 1856 (Acts 1855–6, p. 233), the legislature, in dealing with the subject of limitations, in section 2 of the act, provided for limitations of "*suits for the recovery of personal property,* or for damages for the *conversion* or destruction of the same."  In a separate and distinct section, to wit section 4 of the same act, it provided the same limitations for "all suits for injuries to personal property." From this classification of acts of limitation relating to the rights of personalty, it was clearly not the idea of the legislature that suits for the recovery of personal property were included in the expression, "injuries to personal property." Otherwise they would not have been embodied in two different provisions and sections of the same act prescribing the same period of limitation in each case. In this chapter of the code on the subject of the limitations of actions *ex delicto*, it was evidently not the purpose of the codifiers to embody all the different provisions of the act of March 6, 1856, on this subject. For instance, the first section of that act provides, in effect, that suits for the recovery of real estate shall be brought within seven years after adverse possession under written evidence of title commences,

and not after.    That section is not embodied in the code, and,
strictly speaking, we have no statute of limitations as to suits
for realty in the code.    Its provisions, however, on the subject
of prescriptive title to realty under adverse possession practi-
cally supply the place of this limitation act.    The same is true
of suits to recover personalty, or actions of trover; and section
2 of the act of 1856 was for the same reason not embodied in
the code; for, by virtue of section 3592 of the Civil Code, ad-
verse possession of personal property within this State for four
years shall give a "like title by prescription," the words "like
title" referring to previous sections in regard to prescriptive
title to land.    We think, therefore, that the codifiers purposely
left out the statute of limitations as to trover, considering it
was for all practical purposes embodied in the section of the
code on the subject of adverse possession of personalty for four
years.    There is as much reason in saying that section 3898 of
the Civil Code, fixing a limitation for actions of trespass upon
or damages to realty, applies to suits for the recovery of realty,
as there is to say that the following section, with reference to
injuries to personalty, applies to suits for the recovery of per-
sonalty.    While this court, as above indicated, has recognized
that an action of trover is barred in four years, yet none of
these decisions were based upon the fact that the question was
controlled by the section of the code relating to injuries to per-
sonalty.    We think it quite evident, therefore, that neither in
the legislative nor constitutional history of this State do the
words, "injuries or damages to personal property," have such
a fixed and technical meaning as to make them necessarily
include actions of trover founded upon the wrongful con-
version of property.

It is contended that this issue has been decided in favor of
the jurisdiction of a justice's court by the decision in the case
of *James.* v. *Smith*, 62 *Ga.* 345, and that therefore the question
should remain as *stare decisis*.    It will appear from the facts of
that case that it was not an action of trover.    The plaintiffs
sued the defendant on an account in a justice's court, for the
value of a bale of cotton which he had sold.    While in a tro-
ver action the plaintiff, at his election, may recover a money

verdict for the value of his property converted, yet the suit is brought for the recovery of the property itself, and the verdict in his favor would necessarily be for the property, unless he sees fit to take its money value.    But where suit is brought on an account for the proceeds of the sale of property, the tort is thereby waived, as was decided in that case, and the suit treated as brought upon an implied contract for money had and received·by defendant for plaintiff's use.    In that case, then, the right to recover the property itself was not insisted upon by the plaintiff; his action amounted to a waiver of this right, and the court seems to have considered it was in the nature of an action *ex contractu;* and any judgment thereon could have been pleaded against him as an estoppel in an effort to recover the property itself, the title and right of possession to which he had thus waived.    But on the question as to whether the jurisdiction of a justice's court over actions of trover was involved in that case, we can add nothing to the lucid opinion of Justice Little in the case of *Dorsey* v. *Miller*, 105 *Ga.* 88, in which he reached the conclusion that that case can not be held as authority that a justice's court has jurisdiction to entertain suits sounding in tort other than for damages to personal property.    In the case last cited, while the question of the jurisdiction of a justice's court in actions of trover was not directly made before this court, we think the *principle* declared in the decision, when followed to its logical result, is applicable to the case at bar, viz., that a "justice's court has no jurisdiction of an action of tort unless the alleged wrong consisted of injuring or damaging personal property belonging to the plaintiff."    In *White Star Co.* v. *County· of Gordon*, 81 *Ga.* 47, it appeared that the plaintiff instituted in a justice's court a suit for damages against the defendant, by reason of the detention of one of its steamers at a certain bridge upon the Oostanaula river. The contention of the plaintiff in the case was, that the damages to the company by reason of this detention were injuries to personal property, and that therefore the case was within the constitutional grant of jurisdiction.    It is true Chief Justice Bleckley, in his opinion on page 48, undertakes to distinguish it from *James* v. *Smith*, 62 *Ga.* 345, inasmuch as the de-

tention of the steamer did not imply a conversion of it; but the complete reply to this distinction sought to be drawn by the learned Chief Justice is, that the constitution no more gives jurisdiction to a justice's court for the trial of an issue involving the conversion of property than it does in a case involving its wrongful detention. It was accordingly held in the 81 *Ga.*, above cited, that the mere detention of a steamer involving *damage to the owner* did not imply any injury or damage to the property itself, and therefore the right of action for such damages did not fall within that class embraced by the words of the constitution on the subject. Damage to the *property*, and not simply *to the owner*, was made the constitutional test of jurisdiction in that case. A wrongful *conversion* of property no more implies an injury or damage done to it than a wrongful *detention* of it; and hence, if no action lies in a justice's court for damages growing out of such detention, it necessarily follows it would have no right to entertain actions of trover for a wrong that simply grows out of the conversion. It is true the two cases last cited above did not involve actions of trover, and left the question we are now considering an open one in this court. Yet the *principle* decided in these later cases, we think, necessarily sustains the construction herein given to the constitutional provision under consideration, and logically leads to the conclusion reached in this case.

If, then, the court where this case originated had no jurisdiction of its subject-matter, none could be conferred by consent or waiver of the parties litigant; and the entire proceeding in the justice's court should by a court of review be treated as an absolute nullity. *Cutts* v. *Scandrett*, 108 *Ga.* 620, and cases cited. Our conclusion, therefore, is that the court erred in sustaining the certiorari, and in remanding the case to be tried again in a court which, under the constitution, has no jurisdiction over the matter. Direction is given that the judgment excepted to be set aside, and that the court below enter in lieu thereof a judgment remanding the case to the justice's court, with instructions to dismiss the action.

*Judgment reversed, with direction. All the Justices concurring.*