(41 Misc. Rep. 214.)

JENNIE CLARKSON HOME FOR CHILDREN v. CHESAPEAKE & O. RY.
CO. et al.   SAME v. UNION PAC. RY. CO. et al.   SAME v.
MISSOURI, K. & T. RY. CO. et al.

(Supreme Court, Special Term, New York County.   July, 1903.)

1. CORPORATIONS—BONDS—TRANSFER—FORGED AUTHORITY—LIABILITY OF COR-
PORATION.
    The treasurer of a corporation, without authority, took certain railroad
bonds registered in its name to a broker for sale.   The broker refused
to handle the same unless the bonds were transferred to bearer by the
local transfer agent of the railroad company.   To this end the transfer
agent required from the corporation owning the bonds a copy of a reso-
lution of its directors authorizing the transfer, and a power of attorney
to make it.   The treasurer thereupon, of his own motion, drew up a reso-
lution of authority, to which the signatures of the officers and its seal
had been forged, together with the forged power of attorney, whereupon
the transfer agent in good faith made the transfer, and the broker sold
the bonds.   *Held*, that it was the duty of the railroad company, on seeing
that the bonds were registered in the name of the corporation, to satisfy
itself that the power of attorney was genuine, and that it was therefore
liable to the corporation for the value of the bonds so transferred.

2. SAME—LIABILITY OF BROKER.
    The broker was also liable to the corporation for selling the bonds on
such forged authority, notwithstanding he acted in good faith.

3. CORPORATIONS—TREASURER—AUTHORITY—SALE OF ASSETS.
    Where the treasurer of a corporation was merely authorized to "have
charge of" its securities, he had no authority to change the registration
and sell certain of its bonds without special authority.

4. SAME—CUSTOM OF BROKERS—REGISTRATION OF BONDS—FORGED POWER OF
ATTORNEY—INDEMNITY AGAINST BROKER.
    Where a New York Stock Exchange broker, in the name of his firm
and his cashier, who personally knew the treasurer of a corporation, in
good faith witnessed a forged power of attorney authorizing a transfer
of bonds belonging to the corporation by such treasurer, before the
transfer agent of the corporation issuing the bonds, and such transfer
agent acted on such power, and transferred the bonds, according to a
custom existing in New York City transfer offices for such transfer
agents to accept the witnessing of such powers of attorney by stock
exchange brokers as a sufficient guaranty of the identity of the indi-
vidual executing the power, the broker was liable over to the corporation
issuing the bonds on such corporation being compelled to replace the
same, as having guarantied to it the genuineness of the power of at-
torney.

Actions by the Jennie Clarkson Home for Children against the
Chesapeake & Ohio Railway Company and another, the Union Pa-
cific Railway Company and another, and the Missouri, Kansas &
Texas Railway Company and another, to compel defendants to replace
certain bonds and coupons, or account for their value.   Judgment for
plaintiff.

Rumsey, Sheppard & Ingalls, for defendant Chesapeake & Ohio
Ry. Co.
Pierce & Green, for defendant Union Pacific Ry. Co.
Ward, Hayden & Satterlee, for defendant Missouri, Kansas & Texas
Ry. Co.
Wm. R. Bronk, for defendant Robt. Gibson.
    83 N.Y.S.—58

SCOTT, J. These three actions, involving the same issues of fact and law, were tried together. The plaintiff is a domestic corporation organized for charitable purposes. Each of the defendant railway companies is a foreign corporation, maintaining a registry or transfer office in the city of New York. The defendant Gibson is the general partner of the limited partnership of H. Knickerbacker & Co., and is a member of the New York Stock Exchange, engaged in business in the city of New York as a stockbroker. In April, 1898, the plaintiff purchased and caused to be registered in its name on the books of the defendant railroad corporations certain bonds issued by said companies, as follows: Three of the Chesapeake & Ohio Railway Company, for $1,000 each; four of the Union Pacific Railway Company, of $1,000 each; and four of the Missouri, Kansas & Texas Railway Company, of $1,000 each. All of the aforesaid bonds had coupons attached when acquired, and had all remaining unmatured coupons attached when transferred as hereinafter mentioned. These bonds, after their purchase, were kept in a box hired by the plaintiff corporation in the safe deposit vaults of a bank in this city. To this box both the president and treasurer of the plaintiff corporation had a key and independent access. The by-laws of the plaintiff corporation provided that the treasurer should "have charge of and be responsible for all deeds, contracts and securities, and all moneys belonging to the corporation." On March 12, 1900, one George W. Lessells, who had been for some time a director of the plaintiff corporation, was elected its treasurer, and entered upon the performance of the duties of that office until his removal therefrom on March 21, 1902. In January, 1901, Lessells visited the office of the defendant Gibson, and exhibited the four bonds of the Union Pacific Railway Company, saying that the plaintiff corporation desired to sell them. Gibson's cashier, seeing that the bonds were registered in the name of the plaintiff, informed Lessells that before the bonds could be sold the registration must be so altered that they would be payable to bearer. Lessells asked how that could be done, and was instructed to take them to the transfer office of the railroad company and find out what must be done in order to effect a change in registration. Upon application to the railroad company, Lessells was informed that it would be necessary to furnish a power of attorney, and a copy of a resolution of the directors of the plaintiff authorizing the transfer. Lessells thereupon executed a power of attorney authorizing the transfer agent of the railroad company to "assign and transfer" the bonds to bearer. This power described the bonds by number, and was signed, "The Jennie Clarkson Home for Children, George W. Lessells, Treas.," and was witnessed by one Busch, who was cashier for the defendant Gibson, and by Gibson himself in his firm name of H. Knickerbacker & Co. Lessells also drew up what purported to be a resolution of the board of directors of the plaintiff authorizing him, as treasurer, to sell and assign the bonds. To this pretended copy he appended what purported to be, but were not, the signatures of the president and secretary, and affixed what purported to be, but was not, the seal of the plaintiff. Upon the presentation of these documents the transfer agent of the railroad company transferred the bonds as payable to bearer, and

noted the fact of such transfer upon each bond. The bonds were thereupon returned to the defendant Gibson, who sold them and paid the proceeds of the sale over to Lessells. In March, 1902, the same transaction took place respecting the bonds of the Chesapeake & Ohio Railway Company and the Missouri, Kansas & Texas Railway Company. In each case the bonds were first presented to Gibson for sale; Lessells was advised that they must first be transferred to bearer; application was made to the transfer offices for information as to what was necessary to be done to effect such transfer; a power of attorney was executed by Lessells, and witnessed by Busch and Gibson; a pretended resolution of plaintiff's board of directors was forged; the bonds were transferred to bearer, were delivered to Gibson and sold by him, and the proceeds paid over to Lessells as treasurer. The proceeds of the sale of the Union Pacific bonds in January, 1901, were paid to Lessells by a check drawn to bearer, and he signed a receipt for the money as treasurer. The proceeds of the bonds sold in March, 1902, were paid to him by a check indorsed to his order, with his indorsement guarantied by Busch, so that the money could be drawn direct from the bank. The plaintiff's directors had never authorized the transfer of the registry of the bonds, or the sale thereof, and had never adopted the resolutions of which forged copies were presented to the railroad companies, and the plaintiff never received any part of the proceeds of such sale; nor did the directors of plaintiff have any knowledge or notice of the transfer or sale of any of the bonds until after the sale in March, 1902, and upon such discovery they gave prompt notice to the railroad companies and Gibson. The plaintiff asks judgment in each action against both defendants, that they be required to replace to it bonds and coupons of the like kind and value as those so transferred and sold, or that they be required to account for the value of the bonds and coupons, basing its claim for this kind of relief on Pollock v. National Bank, 7 N. Y. 274, 57 Am. Dec. 520. The Missouri, Kansas & Texas Railway Company and the Chesapeake & Ohio Railway Company ask that, if judgment be awarded against them, they may have affirmative relief against the defendant Gibson.

It is well settled by a multitude of authorities that a corporation cannot justify its transfer of stock or bonds registered in the name of the true owner because it relied upon a forged power of attorney to effect such transfer. Forgery can confer no power, nor transfer any rights. It is the duty of such corporations, before making such a transfer, to be satisfied of the genuineness of the power presented. In so doing they must act upon their own responsibility, and run their own risk of being misled by forgery or fraud; and it is no answer to a claim by the true owner that the company acted in good faith, upon what it supposed to be genuine authority, and without negligence. The true owner cannot thus be deprived of his property. Telegraph Co. v. Davenport, 97 U. S. 371, 24 L. Ed. 1047. Nor is the responsibility of the company limited to the power of attorney to make the transfer. It must also be satisfied that the person executing the power was authorized so to do, and this, too, it must assume the risk of determining upon the evidence before it. When bonds are reg-

istered in the name of the owner, the company to whom application
for a transfer is made is bound to take notice of the nature of the
ownership, and of the general rules of law as to who may lawfully
dispose of property so owned. If bonds be registered in the name of
a person who has died, or in the name of his executor, the company
may safely make a transfer upon the application of the executor or
administrator, because it is an established rule of law that the title to
personal property passes to the executor or administrator, who is
authorized by virtue of his office to sell it; but, if such bonds be reg-
istered in the name of two or more trustees, the company cannot safely
transfer under authority from one, because it is bound to take notice
of the rule of law that in such cases both or all of the trustees must
act conjointly. Cooper v. Illinois Cent. R. Co., 38 App. Div. 22, 57
N. Y. Supp. 925. So when bonds are registered, as in the present
case, in the name of a corporation, the company to whom application
for a transfer is made cannot safely act unless it is satisfied that the
officer executing the power of attorney had authority from the corpo-
ration to do so. The necessity for exacting such proof was recognized
by each of the corporation defendants when they demanded, in addi-
tion to the powers of attorney, copies of the resolutions passed by
the directors of the plaintiff authorizing the transfer.

It is strongly urged in behalf of defendants that Lessells had in-
herent authority, as plaintiff's treasurer, to cause the bonds to be
transferred to bearer and sold, and therefore that no action by the
board of directors was necessary. This contention, however, cannot
prevail. The transfer and sale of the bonds was not a mere ministerial
act, but one calling for the exercise of judgment and discretion.
Whether the bonds should be held or disposed of was a matter relat-
ing to the management of the plaintiff's affairs, and, as such, rested
within the determination of plaintiff's directors, acting as a board.
The duty imposed upon the treasurer by the by-laws, that he "should
have charge of" the securities, certainly did not imply that he might,
without authority from the corporation, dispose of them, and au-
thority from the corporation to dispose of them could be given only
by the board of directors. Nor was it within Lessells' apparent au-
thority as treasurer to change the form of registration of the bonds
and sell them, and no one had the right to presume such authority
from the mere fact that he was treasurer. It is within the ordinary
and accustomed duties of a treasurer to collect moneys due to a cor-
poration, and a debtor paying to him a debt due to the corporation
will be acquitted of his indebtedness, even if the treasurer afterward
steal the moneys, but no such presumed power rests in a treasurer to
sell or pledge the securities of the corporation. Hoyt v. Thompson,
5 N. Y. 320. It is true that in some cases such authority will be pre-
sumed, as where a corporation permits its treasurer or other officer to
act for it during a continued course of business, or holds out its officer
to the public as authorized to act for it, or, with knowledge of other
similar acts on the part of an officer, adopts and thereby ratifies and
confirms them. There are many cases in the books wherein corpora-
tions have been held liable for the unauthorized acts of their agents
and officers, but they all rest upon these or other similar considera-

tions, none of which are present here.   It does not appear that any treasurer of this plaintiff ever undertook, without authority from the board of directors, to sell any of plaintiff's securities until Lessells sold the Union Pacific bonds in January, 1901; and it does appear affirmatively that the directors repudiated his action the moment it was discovered.   There is nothing whatever to show that plaintiff's directors ever authorized their treasurer to sell the securities, or so acted as to hold him out as authorized to sell them or deal with them in any way, or even by inaction ratified his unlawful acts.   The inevitable conclusion is that the defendant railway companies transferred the bonds to bearer without authority of the owner, the plaintiff, and thus became participants in the diversion of plaintiff's property, and assisted, although without evil intent, the dishonest treasurer to do the very act which deprived the plaintiff of its property, and which it was the duty of the railroad companies to prevent.   Cooper v. Illinois Cent. R. Co., supra.

The plaintiff is therefore entitled to judgment against the defendant companies.   I think it is also entitled to judgment against the defendant Gibson.   He, too, knew that the bonds belonged to the plaintiff, and he was bound to know that Lessells, as treasurer, had no power or authority to sell them without express authorization from the plaintiff.   It makes no difference that the bonds, when he sold them, had been transferred so as to be payable to bearer.   That of itself, at the very most, only indicated that the railway companies had been satisfied that Lessells had authority to have their form so changed.   Assuming that Gibson was entitled to presume thus far, it does not alter the fact that he knew who owned the bonds, and was bound to know what authority was necessary for their sale.   It is precisely as if Lessells had in the first instance brought in bonds payable to bearer, and had informed Gibson that they belonged to the plaintiff.   In that case Gibson would have been bound to satisfy himself of Lessells' power to make the sale.   The case, so far as Gibson's liability is concerned, differs widely from that of the brokers who were defendants in Cooper v. Illinois Cent. R. Co., supra.   All the knowledge they were shown to have was that the bonds, before the change in registration, stood in the name of an executor, and the court deemed that the brokers were entitled to rely upon the general rule of law that an executor has title to the personal assets of the estate, with full power of disposition.   The defendant Gibson therefore cannot be acquitted of participation in the diversion of the plaintiff's property, and in assisting Lessells to do the very act which resulted in loss to the plaintiff.

It remains to consider the relative liability, as between themselves, of the railway companies and Gibson.   This question can be properly disposed of in this action, because such relative liability arises out of and results from the cause of action set forth and maintained in favor of plaintiff.   Smith v. Hilton, 50 Hun, 238, 2 N. Y. Supp. 820; Reynolds v. Ætna Life Ins. Co., 28 App. Div. 591, 51 N. Y. Supp. 446.   It is perfectly clear that both the railway companies and Gibson were guiltless of intentional wrong in respect to the sale of the bonds.   It appeared in evidence that it was the cus-

tom of railway transfer offices in the city of New York to accept the witnessing of a power of attorney for purposes of transfer by a stock exchange firm as a sufficient guaranty of the identity of the person executing the power. Each of the powers in question was witnessed by Busch, Gibson's cashier, who personally knew Lessells, and also by Gibson himself, in his firm name. There can be no doubt that Gibson, by so witnessing' the power, understood and intended that he thereby guarantied to the respective railway companies the correctness of the signature of the person undertaking to execute the power. In each case the power purported to be the act of the plaintiff, by George W. Lessells, its treasurer. Gibson's signature upon the power was therefore an assurance to the railway companies that the plaintiff, by its officer, had executed the power. But it had not. The power, while not, perhaps, a technical forgery, was as fraudulent as the forged resolutions. Lessells was a stranger to the railway companies, but was known to Gibson. The bonds, when transferred to bearer, were directed to be returned to Gibson. Undoubtedly the railway companies relied to some extent upon Gibson's guaranty, and it is impossible to say that, in the absence of such a guaranty, more care would not have been taken in ascertaining whether or not Lessells had any authority to transfer and sell the bonds. There must be judgment for the plaintiff against both defendants in each case for a replacement of the bonds and coupons, or, in case they cannot be replaced, for their value, with costs, and an extra allowance in each case of 5· per cent. upon such value. And in the actions against the Chesapeake & Ohio Railway Company and the Missouri, Kansas & Texas Railway there must also be included in the judgment a provision that if either of said companies is required to pay the judgment, or any part thereof, it shall recover the amount so paid from the defendant Gibson. The decision and decree may be settled on two days' notice.

Judgment accordingly.