SIMON, Justice.
This controversy involves the ownership of outstanding stock certificates of Pailet Realty Company, originally issued on May 24, 1905, to Elias Pailet, who died on June 21, 1933. The inception of this controversy is the fortuitous discovery during the year 1954 that the corporation holds valuable assets consisting of title to real estate situated in Jefferson Parish.
Elias Pailet was married to Jane (of Jenny) Katz on December 3, 1899.- "Upop *975 his death in 1933 he was survived by his widow in community and Harold, Norman, Lester, Sidney and Florence, the five children who were the issue of this marriage.
On November 12, 1938, Lester Pailet married Laura Overton. On June 7, 1950, Lester Pailet died, being survived by his widow in community, the appellant herein, and his mother and sole forced heir. In the proceedings styled “Succession of Lester Pailet” in the Civil District Court for the Parish of Orleans, Lester’s last will and testament was duly probated and by testamentary provision Harold I. Pailet and Harris Weil were named as co-executors.
The stock certificates here involved, comprising all outstanding shares of Pailet Realty Company, were found in the private bank box of Lester Pailet, deceased, and though originally issued in the name of Elias Pailet, were found to bear the endorsement in blank and without date, “Elias Pailet per pro. Harold I. Pailet”. The inventory in Lester’s succession listed the shares of stock as “Miscellaneous” and “For Memorandum Purposes”, stating the shares to be without value and without classifying either as separate or community property. Harold I. Pailet and Norman Pailet were signatories to the inventory, and Harold I. Pailet actively participated in the administration of the succession for a period of about three years.
‘ Because of numerous conflicting claims and counter-claims as between the surviving widow of Lester Pailet and the surviving widow and heirs of Elias Pailet, and after several years of conferences and consultations of attorneys representing the various parties, a compromise agreement, dated November 25, 1953, was reached and formally executed by all persons in interest.
By stipulation of the parties it is shown that immediately preceding the execution of this compromise agreement all the parties thereto were informed that the shares of stock in question were without value, the corporation, Pailet Realty Company, owning no assets. The parties further stipulated that, prior to the execution of the compromise agreement, the surviving widow of Lester Pailet, appellant herein, declared to her attorney that the subject certificates were owned by the Pailet family before her marriage to the said Lester Pailet. In view of this declaration the parties to the compromise agreement specifically declared therein that in consideration of the mutual agreements each of the parties was granted full release from any and all claims, known or unknown at that time, so that in effect appellant herein, as surviving widow, would have no claim of any nature or kind whatsoever against the widow and heirs of Elias Pailet.
It appears that some months subsequent to the execution of this compromise agree *977 ment the Pailet heirs discovered that Pailet Realty Company owned 540 lots in the Jefferson Drive and Taft Park subdivisions, situated in the Parish of Jefferson; that no one, prior to said discovery, was aware of these assets.
On May 26, 1955, the succession of Elias Pailet was opened and an inventory was filed listing the subject certificates of stock as succession assets.
The instant proceeding arose on a rule initiated by the surviving widow and forced heirs of Elias Pailet, appellees herein, directed against the surviving widow of Lester Pailet to show cause why the inventory should not be approved and homologated, and, particularly, why the certificates of stock should not be declared to be the property of the succession of Elias Pailet.
The surviving widow of Lester Pailet answered said rule, setting up the affirmative defense that the subject shares belonged to the community property of her deceased husband and that any interest she might have in said share certificates can not be affected by the compromise agreement heretofore entered into, for the reason that at the time of the confection of the compromise agreement the certificates of stock were listed as valueless and that the compromise agreement was based upon an error of fact insofar as it might affect her community rights thereto.
Upon trial of the rule the lower court rendered judgment making the rule absolute, adjudicating the certificates of stock to belong to the community assets of the succession of Elias Pailet. Hence, this appeal.
Appellees contend that the endorsement of Harold I. Pailet, appearing on said certificates of stock, is absolutely void and transferred no right, title or interest therein to Lester Pailet, deceased; that appellant’s admission that the stock in question was owned by the Pailet family prior to her marriage to Lester Pailet shows that she had no interest in said stock; and that the compromise agreement of November 25, 1953, forecloses appellant’s claim in respect thereto.
Appellant asserts ownership of said certificates by virtue of their being in the physical custody of her husband and found in his bank box after his death; that the endorsement on the reverse of said certificates fixed ownership in her deceased husband; and that the said certificates are presumed to be community property of the succession of her deceased husband, having been listed in the succession inventory as an asset thereof.
It is conceded that the original shares of stock comprising certificates numbered 3 to 16, inclusive, or 14 in number, in the name of Pailet Realty Company were isL sued to Elias Pailet on May 24, 1905, during the existence of the community of *979 acquets .and gains éxisting between him and his surviving widow, and that these shares of stock were assignable only according to the charter and by-laws of the company. It is also conceded that these certificates were never issued in any. name other than that of Elias Pailet.
- The record is barren of any proof of the existence of any power of attorney, either by authentic or private act, letter or otherwise.
LSA-R.S. 12:524 provides as follows:
“§ 524. ' How title to certificates and shares may be transferred
■ “A. Title to a certificate and to the shares represented thereby can be transferred only:
“(1) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or
' “(2) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate .to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person.
.. “B. The provisions of this Section shall ih.e applicable ■ although the charter or articles of incorporation or code of regulations or by-laws of the corporation issuing the certificate and the certificate itself, provide that the shares represented thereby shall be transferrable only on the books of the corporation or shall be registered by a registrar or transferred by a .transfer agent.”
Therefore, to effect a transfer of stock, LSA-R.S. 12:524, subparagraph A, 1 and 2, makes two things necessary — one, the endorsement of the certificate or the assignment thereof in a separate instrument, -or a power of attorney, signed by the person appearing by the certificate to be the .ozvner of it, and the other, the delivery of the certificate, and, where such is the means of transfer adopted, the delivery of the certificate together with the assignment or the power of attorney authorizing the transfer.
. We are aware of the fact that circumstances may arise whereby the delivery of a certificate may be made by one having no right of possession or authority from the owner of the certificate, or from the person purporting to transfer title. Under such circumstances, however, we believe that such delivery presupposes that the certificate has been endorsed by the one appearing to be the owner, or that it has been assigned.in writing by the owner, or that the power of attorney has been properly executed by him.
*981 Under the statutory provisions above quoted, the necessity for the endorsement by one appearing from the certificate to be the owner, or as to the necessity for the assignment or execution of the power of attorney by such person is manifestly mandatory.
It is likewise clear that where there appears the lack of any proof of authority to execute an endorsement of a certificate, we are justified in concluding that an unauthorized endorsement is entitled to no legal effect whatsoever. We readily appreciate that were this otherwise, the owners of stock would be seriously endangered and the value of said stock as articles of commerce would be impaired.
Where a certificate of stock is presented, as in this instance, with an unauthorized endorsement, which is an uncontroverted fact herein, such an endorsement does not transfer or convert the ownership from the person appearing to be the owner into an undisclosed ownership, and the person accepting such assignment or transfer must ascertain proof of the genuineness of the endorsement or the existence of proper authority to make the endorsement.
In the instant case the record discloses that all the parties to the endorsement transaction are now deceased, and there is no proof available as to the time or date or the circumstances under which Lester Pailet acquired possession of these certificates. Neither is there any proof as to the date and circumstances under which Harold I. Pailet endorsed the shares of. stock in blank as purported agent and attorney in fact for Elias Pailet. It is conceded that the record contains no power of attorney in fact or in law, either by authentic or private act.
We are constrained to conclude that the endorsement appearing on the certificates of stock in question is an absolute nullity and can not and does not transfer the ownership thereof, and, further, that said certificates form a part of the community assets of the succession of Elias Pailet.
In view of the conclusions reached by us, we find it unnecessary to inquire into the effect of the compromise agreement entered into by and among the parties thereto.
For the reasons assigned, the judgment appealed from is affirmed.