39868. FRYE v. COMMONWEALTH INVESTMENT CO.

DECIDED APRIL 3, 1963—REHEARING DENIED MAY 9, 1963.

*Buchanan, Edenfield & Sizemore, W. Dan Greer,* for plaintiff in error.

*Alston, Miller & Gaines, Lloyd T. Whitaker, W. B. Spann, Michael A. Doyle,* contra.

EBERHARDT, Judge. ■ Was the action here barred by the statute of limitation?[1] The answer to this may well depend upon several considerations. It is contended by plaintiff in error that although his action may have accrued when the last of the stock certificates was transferred on August 29, 1955, the running of the statute was suspended under the provisions of *Code* § 3-807. "If the defendant, or those under whom he claims,

---

[1]*Code* § 3-1003.

shall have been guilty of a fraud by which the plaintiff shall have been debarred or deterred from his action, the period of limitation shall run only from the time of the discovery of the fraud."

If Pruett forged the stock power under which the certificates were transferred and actively concealed his actions from Dr. Frye, representing to him that his stocks were still registered in his name and held by the broker in his behalf, there can be no question that he was guilty of an actual fraud involving moral turpitude. *Austin v. Raiford*, 68 Ga. 201. Under the allegations of the petition, as amended, it would appear that Commonwealth claims under Pruett, and in that situation the running of the statute was suspended until the fraud was discovered. It is alleged that the transfer was by the broker, acting as principal, and this must be taken as true on demurrer.

We are not unmindful of Glover v. National Bank of Commerce of N. Y., 141 N.Y.S. 409 (156 App. Div. 247), Mastellone v. Argo Oil Corp., 45 Del. 517 (76 A2d 118) and other cases holding that the true owner's right of action accrues "the moment the wrong is done,". i.e., when the transfer is made, and that his ignorance of the facts will not postpone the running of the statute. However, it does not appear from a reading of those cases that there were in effect in those states statutes comparable to *Code* § 3-807. Further, it is probably implicit in these decisions that title to the stock passed by virtue of the forged stock power or indorsement. We doubt that it can be held to have that effect in Georgia.

■ Did title to the stock pass under the transfer here? Was there any duty on Commonwealth to determine whether the stock power was genuine when the certificates were presented for transfer? We think so, particularly since it is alleged that the power was forged and that Commonwealth had on file plaintiff's true signature.

In Western Union Tel. Co. v. Davenport, 97 U.S. 369 (24 LE 1047) it is said that, it is the duty of officers of a corporation to see that all transfers of its shares are properly made on its stock books, either by the stockholders themselves or persons having authority from them. "[A] corporation transfers stock

at its peril, and must be sure that the person to whom it issues the certificate is the true owner . . ." Greasy Brush Coal Co. v. Hays, 292 Ky. 517, 519 (166 SW2d 983). "It is generally accepted that a corporation owes its shareholders the duty to protect them from fraudulent transfers. Pennsylvania Company v. Franklin Fire Ins. Co., 181 Pa. 40, 37 Atl. 191 (1897), Egan v. United Gas Improvement Company, 319 Pa. 17, 178 Atl. 683 (1935). A corporation also owes its shareholders a duty to protect them from unauthorized transfers." Lesavoy Industries, Inc. v. Pennsylvania Gen. Paper Corp., 404 Pa. 161, 166 (171 A2d 148).

Does it relieve the corporation of this duty if the stock certificates are presented for transfer by a broker to whom the owner has entrusted the certificates for custodial safekeeping and with whom he has had a course of dealing? Apparently it does not. Where corporation stock was canceled and transferred on the books of the corporation by broker's use of altered assignments, without knowledge or consent of the owner, the owner was entitled to recover from the corporation the value of the stock. Hill v. American Tel. &c. Co., 37 NYS2d 957. The same result has been reached when the stock was removed from the owner's safety deposit box and the indorsement or transfer forged by a son to whom the key had been entrusted, Pennsylvania Co., v. Franklin Fire Ins. Co., 181 Pa. 40, supra, and where the forged indorsement was accomplished by a trusted employee. Knox v. Eden Musee Americain Co., 148 N.Y. 441 (42 NE 988). The courts point out that in these days almost everyone has employees, agents and brokers and that much of business is transacted through the aid and assistance of these, in whom confidence and trust must be reposed. No possible care can guard against all unfaithfulness, and we are not to assume that our agents or employees will embark upon criminal paths and ventures. Holding that the corporation must suffer the loss in Pennsylvania Co. v. Franklin Fire Ins. Co., 181 Pa. 40, 49, supra, the court said: "The defendant suffers from the crime of a forger, made possible because the son could write his father's name, not because the father intrusted him with a key; and because it, without inquiry, accepted forged signatures as gen-

uine." Similar results were reached on the basis of forged indorsements or powers in Jennie Clarkson Home for Children v. Chesapeake &c. R. Co., 41 Misc. 214 (83 NYS 913); Mailler v. United States Pipe &c. Co., 246 App. Div. 540 (282 NYS 591); Townsend v. Union Trust Co., 2 FSupp. 734 (W. D. Pa.). For a general discussion of this duty of a corporation see 12 Fletcher Cyclopedia, Corporations (Perm. Ed.) §§ 5537.1 through 5563.

Do the provisions of the Uniform Stock Transfer Act (*Code Ann.* §§ 22-1901, et seq.),[2] which were of force and effect in 1955 when the alleged transfers took place, alter the situation? We conclude that they do not. Louisiana also adopted the act, as have many of the other states, and its Supreme Court holds that: "[T]o effect a transfer of stock, LSA-R.S. 12:524, subparagraph A, 1 and 2,[3] makes two things necessary—one, the endorsement of the certificate or the assignment thereof in a separate instrument, or a power of attorney, *signed by the person appearing by the certificate to be the owner of it,* and the other, the delivery of the certificate. . ." Succession of Pailet, 231 La. 972 (93 S2d 235).[4]

These principles of law are in harmony with what the courts of Georgia have said about forged transfers, and liability of the corporation when a transfer is thus effected. In *Georgia Cas. Co. v. McRitchie,* 45 Ga. App. 697, 701 (166 SE 49) recognition of the rule is made by saying: "[T]here is authority (summarized in 14 CJ 772, 773) to the effect that a corporation is in a sense a trustee for its stockholders for the purpose of protecting their shares against forged or unauthorized transfers, with

---

[2]Repealed by Uniform Commercial Code, Ga. L. 1962, p. 156 (*Code Ann.* § 109A-10—103).

[3]Section 1 of USTA, and same as *Code Ann.* § 22-1903, before its repeal by UCC.

[4]Although the general purpose of the Uniform Stock Transfer Act has been held to be to give impetus to freedom of business transactions by making corporate stock freely negotiable, Reynolds v. Reynolds, 54 Cal.2d 669 (355 P2d 481), no title to a negotiable instrument can pass by means of a forgery in Georgia. *Buena Vista Loan &c. Bank v. Stockdale,* 56 Ga. App. 168 (2) (192 SE 246).

the result that it may be held responsible to stockholders for loss or injury sustained by negligence or misconduct of its officers or agents in this regard. . ." And where stock was stolen and the name of the true owner was forged on the transfer the corporation was required to issue to the owner new stock and account to her for dividends. *Blaisdell v. Bohr,* 68 Ga. 56.[5]

A circumstance obtains here that perhaps did not in any of the cited cases, or at least it does not appear so from facts recited in them, viz., Commonwealth had on file the true and genuine signature of Dr. Frye. If it had compared the signature on the stock power with that it must have become evident that the power was not genuine, or at least it would have been on inquiry and, being on inquiry, was on notice of what the inquiry would have led to or disclosed. *Code* § 37-116.

There is, of course, no presumption that an indorsement or stock power is forged. Indeed, when it comes to the corporation for transfer in apparent regular order there is a presumption of genuineness, for it is never to be presumed that a crime has been committed. The burden of establishing the forgery is upon him who asserts it. Cf. Nolan v. American Tel. &c. Co., 326 Ill. 328 (61 NE2d 876).

If the stock power here had been signed by Dr. Frye in blank and delivered with his certificates to Pruett, though not for the purpose of a transfer, an estoppel would have arisen against his assertion that the transfer was unauthorized, for when a loss must be suffered which results from the acts of one of two people, i.e., the act of the owner in delivering a stock power signed in blank, and the act of the corporate officers in accepting from the broker an unauthorized power, it must fall upon him who first trusted the defaulting broker. *Code* § 37-113.

We conclude that no title passed under the transfer based upon a forged stock power.

---

[5] If Commonwealth had required that Dr. Frye's signature be guaranteed by a bank or other responsible institution, it might have afforded itself protection by having a cause of action against the guarantor of a forged signature. Schneider v. American Tel. &c. Co., 169 Misc. 939 (9 NYS2d 564).

■ We now pass to a consideration of whether a prescriptive title may have ripened in the defendant. It is contended by Commonwealth that since the plaintiff must show title in himself in order to maintain the trover action the general demurrer was properly sustained because it appears from the petition that Commonwealth has been in adverse possession of the certificates for more than four years prior to the bringing of the action, relying on *Code* § 85-1706.

The rules for determining whether title to personalty has ripened by prescription are the same as those applying to real estate. *Blocker v. Boswell,* 109 Ga. 230, 237. (34 SE 289); *Ewing v. Tanner,* 184 Ga. 773, 779 (193 SE 243).

If the litigation here had been between Dr. Frye and a bona fide purchaser for value who had held the stock under claim of right since the transfer, it seems obvious that a prescriptive title must be held to have ripened in the purchaser. But such is not the case. Commonwealth redeemed or purchased the stock for itself. And since there is a fiduciary relation between the corporation and its stockholders giving rise to the duty on its part to protect the stockholder against fraudulent transfers based upon forged or unauthorized indorsements or stock powers,[6] there can be no adverse possession of the corporation which can become the foundation of a prescriptive title unless the facts clearly and unmistakably demonstrate that the character of its possession is in truth and in fact adverse. "[T]he Statute does not begin to run until the possession of the trustee . . . becomes *adverse, tortious and wrongful,* by the disloyal acts of the trustee, which must be *open, continued* and *notorious,* so as to preclude *all doubt* as to the character of the holding of the property, or the *want of knowledge* on the part of the *cestui que trusts." Scott v. Haddock,* 11 Ga. 258, 265.

Of course the corporation does not hold title to the stock of its stockholders, and is not a trustee—since one of the func-

---

[6]See generally our discussion of the corporation-stockholder relation in the first division of this opinion, and 13 Am. Jur. 439, Corporations, §§ 374-376; 18 CJS 1065, Corporations, § 439; 12 Fletcher, Cyclopedia Corporations (Perm. Ed.) 613, § 5538.

tions of a trustee is to hold title to the res for the benefit of his cestui que trust—yet, there is a fiduciary relationship. If it is to hold the stock of a stockholder adversely to him we think that its possession should be of such nature and that the facts should be such as to preclude want of knowledge on the part of the stockholder. Certainly that does not appear from the allegations here. And see *Hoyle v. Jones*, 35 Ga. 40 (89 AD 273).

We conclude that under the facts here pleaded there could have been no adverse possession of the stock by Commonwealth as against Dr. Frye. Consequently no prescriptive title has ripened in it.

*Judgment reversed. Felton, C. J., and Russell, J., concur.*