22117. COMMONWEALTH INVESTMENT COMPANY v. FRYE.

Argued October 15, 1963—Decided November 7, 1963—
Rehearing denied November 19 and November 21, 1963.

*Alston, Miller & Gaines, Lloyd T. Whitaker, Michael A. Doyle,*
for plaintiff in error.

*W. Dan Greer, Buchanan, Edenfield & Sizemore,* contra.

Duckworth, Chief Justice. The arguments in this case cause us to feel that an emphatic statement should be made by this court that the legislature, and not the courts, is empowered by the Constitution to decide public policy, and to implement that policy by enacting laws; and the courts are bound to follow such laws if constitutional. With this fundamental principle thus stated, we look to the legislation, *Code* § 3-807, to see whether the limitation statute of four years to bring this suit applies until the fraud is discovered. This law plainly provides that: "If the defendant, or those under whom he claims, shall have been guilty of a fraud by which the plaintiff shall have been debarred or deterred from his action, the period of limitation shall run only from the time of the discovery of the fraud." On

demurrer, properly pleaded facts are treated as true. Therefore, the allegations of the petition that Pruett & Company forged the signature of plaintiff to the transfers of the shares of stock and the corporation issuing the stock and accepting the forged transfer, which is the defendant here, had on file a true signature of the petitioner which would have shown the transfer signature to be a forgery, are treated as true. It is trifling with terms to contend that the defendant is not claiming under Pruett & Company, the forger, and hence is not covered by *Code* § 3-807. Of course, the amended petition shows that Pruett & Company alone fraudulently placed title in the defendant. If so, defendant claims under Pruett & Company. They have no other basis for their claim, certainly not under the petitioner who was the owner and the victim of the forgery, which the defendant in the exercise of reasonable care and in fulfillment of its duty could have discovered by a comparison of signatures.

We regard further discussion here as surplusage in the light of the exhaustive opinion of the Court of Appeals. For the reasons stated above as well as those stated in the opinion of the Court of Appeals, the trial court erred in sustaining the demurrer to the amended petition, and the Court of Appeals did not err in reversing that judgment.

*Judgment affirmed. All the Justices concur, except Head, P. J., Mobley and Quillian, JJ., who dissent.*

HEAD, Presiding Justice, dissenting. The plaintiff, Dr. A. H. Frye, Jr., in his trover action to recover from the defendant certain certificates of stock alleged to have been conveyed to the defendant unlawfully and fraudulently by Pruett and Company, alleges facts which show that Pruett and Company was his agent. In paragraph 5 of his amended petition the plaintiff alleges in part: "Said Pruett and Company, Inc. was plaintiff's stock broker and said stock certificate . . . which was issued to plaintiff as owner, had been entrusted by plaintiff to said Pruett, and Company, Inc. for custodial safekeeping." Generally a stock broker is a dealer in negotiable securities. The plaintiff, however, did not limit his relationship with Pruett and Company to the buying and selling of negotiable securities, but made Pruett and Company his agent "for custodial safekeeping" of the plain-

tiff's stock. As to the relationship of principal and agent the Code provides: "The principal shall be bound for the care, diligence, and fidelity of his agent in his business, and hence he shall be bound for the neglect and fraud of his agent in the transaction of such business." *Code* § 4-311. While neither the opinion of the Court of Appeals, *Frye v. Commonwealth Investment Co.*, 107 Ga. App. 739 (131 SE2d 569), nor the opinion of this court, refers to this Code section, I nevertheless think it is applicable here and that the plaintiff having selected his agent and having placed it within the power of his agent to commit wrongful and fraudulent acts as related to the plaintiff's property, the plaintiff should bear any loss occasioned by such wrongful acts of his agent.

The fact that the defendant, by reason of some prior transaction, may have had in its files a genuine signature of the defendant should not subject it to loss for the forgery, in the absence of notice of some fact indicating the transfer to be wrongful. I believe this conclusion accords with the provisions of the Uniform Transfer Act of 1939 (Ga. L. 1939, pp. 384, 387, § 7; *Code Ann. Supp.* § 22-1907), which provides: "If the indorsement or delivery of a certificate, (a) was procured by fraud or duress, or (b) was made under such mistake as to make the indorsement or delivery inequitable; or if the delivery of a certificate was made (c) without authority from the owner, or (d) after the owner's death or legal incapacity, *the possession of the certificate may be reclaimed and the transfer thereof rescinded, unless: (1) The certificate has been transferred to a purchaser for value in good faith without notice of any facts making the transfer wrongful, or (2) the injured person has elected to waive the injury or has been guilty of laches in endeavoring to enforce his rights."* (Italics supplied.) The term "in good faith" in the Uniform Stock Transfer Act is defined as meaning "in fact done honestly, whether it be done negligently or not." *Code Ann. Supp.* § 22-1902. (The opinion of the Court of Appeals recognizes that the Uniform Stock Transfer Act was of "force and effect" when the alleged transfer took place.)

There is no contention by the plaintiff that the defendant was not a purchaser for value in good faith, nor does the plaintiff

allege any fact to show that the defendant had any notice, either actual or constructive, that the endorsement on the certificate was fraudulent, it being alleged only that the defendant had notice of the plaintiff's genuine signature by reason of the "same appearing upon the original written application previously made by plaintiff to defendant for purchase of stock. . ." It is not alleged when the written application was made, nor is it alleged that the application was such a paper that the defendant would be required to file and keep it, or that it was in fact in existence, at the time of purchase from Pruett and Company, either in the files and records of the defendant or elsewhere. Under the Uniform Stock Transfer Act of 1939, if at the time of the purchase by the defendant from Pruett and Company it acted "in good faith," it would not be liable under that Act whether it acted "negligently or not." *Code Ann. Supp.* § 22-1902.

As to any diligence on the part of the plaintiff to discover the fraud of his agent, it is alleged only that his agent "did wilfully and actively misrepresent to plaintiff that said shares of stock were still registered by defendant in plaintiff's name" and "did wilfully and maliciously conceal from plaintiff the fact that said stock had been fraudulently liquidated and its value embezzled by them, . . ."

In *Sutton v. Dye*, 60 Ga. 449, it is said in part: "Fraud which must have been discovered if usual and reasonable diligence had been exercised, is not a good reply to the statute of limitations. Where, in 1867, a factor sold cotton for his principal, received the proceeds, and, on payment being demanded, answered falsely and fraudulently that he had paid the money over to a third person, but was not then or thereafter called upon to show a receipt, or exhibit his books, or furnish any evidence of the payment except his bare word, and used no trick or artifice to support his statement or stifle inquiry, an action brought for the money, in 1877, by the principal against the factor, was barred; and the declaration, though setting forth the fraud, and averring its nondiscovery until within two years prior to the institution of the suit, was properly dismissed on demurrer." It is my view that the present case falls squarely within the lack of diligence shown by the facts in the *Sutton* case, and that the trial court properly

dismissed the plaintiff's action in the present case on general demurrer. It is the rule that the person defrauded is required to use diligence to discover the fraud. *Little v. Reynolds*, 101 Ga. 594 (28 SE 919); *Crawford v. Crawford*, 134 Ga. 114 (3) (67 SE 673, 28 LRA (NS) 353, 19 AC 932); *Frost v. Arnaud*, 144 Ga. 26 (85 SE 1028); *Morris v. Johnstone*, 172 Ga. 598 (5) (158 SE 308); *Brinsfield v. Robbins*, 183 Ga. 258 (188 SE 7).

I am authorized to say that Mr. Justice Mobley and Mr. Justice Quillian concur in this dissent.