No. 39.—HENRY JACOBS, plaintiff in error, *vs.* JOSEPH POU, adm'r, &c. defendant in error.

[1.] A judgment of dismissal, by a Court of Ordinary, discharging an administrator, will relieve him from all liability on account of his administration, unless such judgment be impeached in that Court, for irregularity, or in the Superior Court, for fraud.

[2.] After the dismissal of an administrator, the Statute of Limitations commences to run in his favor, as against the claim of a distributee against him, the relation of trustee and *cestui que trust* having terminated between them.

In Equity, in Talbot Superior Court. Decision by Judge PERKINS, March Term, 1855.

In 1825, Seaborn Jacobs died, owning a small estate, and leaving a widow and two infant children. George M. Gullett became the adm'r, and took possession of the estate. In 183–, letters dismissory were granted by the Ordinary of Talbot County, to the administrator. Gullett afterwards died, and Joseph Pou was appointed administrator of his estate. T. W. Moore was appointed guardian of Henry Jacobs, one of the minors, (the mother and one of the children being dead,) and as such, filed a bill for account against the administrator of Gullett. In 1847, Henry Jacobs arrived at age. The bill of the guardian continued pending till 1851, and was then dismissed. In 1852, (but not within six months after the dismissal of the former bill,) Henry Jacobs, in his own right, filed a bill against Pou, as administrator, for an account, and alleged that the judgment granting letters of dismission, had been fradulently obtained by the said Gullett, by false representations made by him to the Ordinary, as to his having settled up and paid out said estate.

On the trial of this bill, it was proven by Mrs. McKenzie, "that she was very confident that Mr. Gullett never paid over any portion of the estate or its proceeds to any person during his life-time—only the pittance of interest which he paid to the widow; and her reasons were, that Henry Jacobs lived with her the most of the time, from his father's death to the death of Gullett, and if there had been any money paid, she would have known it."

Mrs. McNeal swore: That in 1827 or 1828, George M. Gullett said he had $400 in his hands belonging to the heirs of Gullett, and gave Mrs. Jacobs a written statement, showing what was due to the heirs; that Mrs. Jacobs had that writing in 1836; that Gullett never paid, so far as she knew, but five dollars out of that sum, and that was for the schooling of Henry."

The Jury found a verdict for the complainant (some other evidence, as to other points, being before them.) On motion, the Court granted a new trial, on the ground that the verdict was contrary to the evidence and the law.

This decision is assigned as error.

THOMAS and DOWNING, for plaintiff in error.

L. B. SMITH; B. HILL, for defendant.

*By the Court.*—STARNES, J. delivering the opinion.

Two points present themselves to us, as clearly controlling this case.

[1.] The judgment of dismissal, by the Court of Ordinary, in such cases, must operate as a discharge from all liability on the part of the administrator, unless the same be impeach-ed in that Court, for irregularity, or in the Superior Court, for fraud. The latter course has been adopted in this case; and the bill, accordingly, alleges that the dismissal was obtained by the fraudulent representations of Dr. Gullett, as administrator.

It is necessary that such an allegation should be sustained by proof—proof which should consist, not of inference from the fact, that payment had not been made, but of some wrongful act done by the administrator, the effect of which was to deceive and impose upon the Court, and thus fraudulently and improperly to obtain the judgment of dismissal. But for aught that appears in this evidence, it may have been the opinion and judgment of the Court, upon some showing in good faith made by the administrator, that he had fully settled.

Indeed, the proof is only negative. The two ladies who are witnesses, say that they never knew of any payment, and that Mrs. Jacobs had a memorandum acknowledging an indebtedness, made by Dr. Gullett, as late as the year 1836. This may be so, and still Dr. Gullett may have settled with the guardian, between the years 1827 and 1831.

It is proper that the judgment should stand as evidence of this, until there is some proof of fraudulent representations

made by Dr. Gullett, or other deceit practiced upon the Court. It is proper as a rule of security and repose.

[2.] In the next place, we are of opinion that the Statute of Limitations was a good plea in this case. It was shown, that the plaintiff in error was of age, (at the very latest,) in March, 1847. From that time, the Statute commenced to run against him. It would have been avoided by the suit previously commenced, if that bill had progressed to a successful issue; but that suit was dismissed in 1851, and another bill was not filed until more than six months had elapsed. There was, consequently, nothing to obstruct the operation of the Statute; and more than four years having elapsed from the time when the plaintiff came of age, before the filing of the last bill, his remedy upon the account was barred by the Statute.

The only reason which has been given, why this should not be so is, that the Statute does not run in favor of a trustee against his *cestui que trust*. This principle does not at all influence the case before us. This relation between these parties, was terminated by the dismissal of the administrator; and his possession, from that time, was adverse to the *cestui que trust*.

There was evidence, that a payment of five dollars was subsequently made by Dr. Gullett to Mrs. Jacobs, for the schooling of the plaintiff in error, but there was no evidence that this was made by him as a trustee for the plaintiff in error, nor could it have the effect of continuing that relation, after the judgment of dismissal.

Judgment affirmed.