### SEAGRAVES, administrator, *v.* POWELL COMPANY.

1. Application to the judge of the superior court for the sanction of a petition for certiorari to an inferior judicatory must be made within thirty days from the date of the judgment complained of. Civil Code (1910), § 5188. By section 4365 it is provided that all writs of certiorari shall be allowed within three months from the date of the judgment of which complaint is made. Accordingly, where an application for a writ of certiorari, complaining of a judgment of the court of ordinary dated November 19, 1913, was presented to the judge of the superior court within thirty days, and duly sanctioned by him on November 29, and was filed on January 2, 1914, in the office of the clerk of the superior court to which the writ was made returnable, there was no error in refusing to dismiss the petition on the ground that it was not filed within the time allowed by law.

2. Where an administrator was discharged by the court of ordinary, and subsequently an application was made to set aside the judgment of discharge on the ground that it was obtained by fraud, and the ordinary sustained a demurrer to such application, a writ of certiorari would lie to correct such judgment.

(a) A motion to dismiss a writ of certiorari taken to correct an alleged error in the judgment of the court of ordinary, based on the ground that appeal, not certiorari, was the proper remedy, did not raise a question as to whether the applicant for certiorari had filed written exceptions in the court of ordinary, which had been overruled, before he applied for the writ.

3. A certain corporation obtained a judgment against one S. E. Seagraves and Mrs. J. P. Seagraves. The former was the administrator on the estate of J. P. Seagraves, deceased. The judgment creditor garnished the administrator, who answered, and his answer was traversed. While the case was pending, the administrator obtained a discharge from the court of ordinary. The judgment creditor which had caused the garnishment to be served upon the administrator thereupon made a motion to set aside the discharge, on the ground that it was fraudulently procured. *Held*, that the corporation which held the judgment, and which had garnished the administrator as such, thereby proceeding against the estate to subject the amount which might be due to the judgment debtors, had such an interest as authorized it to make a motion to set aside the discharge on the ground that such discharge was procured by fraud.

4. If a judgment creditor of two named persons caused a garnishment, based on the judgment, to be served on the administrator of a decedent, and if pending such garnishment proceedings, on a traverse to the answer of the garnishee, the administrator procured a discharge from the court of ordinary by falsely and fraudulently representing to that court that he had fully administered the estate of the decedent, when in fact he had not done so, and as administrator was indebted to the judgment debtors or one of them, a petition by the judgment creditor to set aside the judgment of discharge on the ground that it was thus procured by fraud, and without his knowledge, was not subject to general demurrer.

(a) There was no special demurrer to such allegations of the petition, and they were good as against a general demurrer.

JUNE 23, 1915.

Certiorari. Before Judge Daniel. Pike superior court. July 6, 1914.

*E. C. Armistead,* for plaintiff in error.

*Cleveland & Goodrich,* contra.

LUMPKIN, J. An application was made to the court of ordinary to set aside a discharge granted to an administrator, which it was alleged had been obtained by falsely and fraudulently representing to the ordinary that the administrator had fully discharged all of his duties as such. The ordinary sustained a demurrer to the

petition, and the petitioner obtained a writ of certiorari. A motion was made to dismiss the certiorari proceedings. It was overruled; and the presiding judge held that it was error to sustain the demurrer to the petition to set aside the judgment of discharge, and remanded the case for a trial on the facts. The defendant in certiorari excepted.

1. One ground of the motion to dismiss the certiorari proceedings was because the application for certiorari was not filed in the clerk's office within the time allowed by law. The judgment sustaining the demurrer was rendered by the ordinary on November 19, 1913. The application for certiorari was sanctioned on November 29th. There is no entry of filing in the record; but the writ of certiorari was dated January 2, 1914, showing that the papers were in the hands of the clerk by that date. The contention of counsel for the plaintiff in error was that it was necessary for the application to be filed in the clerk's office within thirty days from the date of the judgment complained of. This contention involves a glance at the legislation and decisions bearing on the point raised. In the judiciary act of 1799, it was provided that if a party should take exceptions to any proceedings in a cause in an inferior court, and they should be overruled, it should be lawful for the dissatisfied party, "on giving twenty days notice to the opposite party or his attorney, to apply to one of the judges of the superior court, and if such judge shall deem the said exceptions to be sufficient, he shall forthwith issue a writ of certiorari." Cobb's Digest, 523. By the act of December 29, 1838, it was declared that it should not be lawful for any judge to sanction or grant a writ of certiorari, "unless such writ of certiorari shall be applied for within the term of six months next after the case has been determined in the court below." Cobb's Digest, 528. The act of February 21, 1850, contained the first express reference to filing. It provided that it should be lawful for either party in a justice's court, who might be dissatisfied with the judgment, "to apply for and obtain a certiorari on complying with the requisitions heretofore prescribed by law, . . and on being filed in the office of the clerk of the superior court, it shall be his duty to issue the writ," which should be returnable to the next term of court sitting twenty days after the issuing thereof. Cobb's Dig. 529. On March 5, 1856, a general law in regard to the limitations of actions

was passed. By the. sixteenth section it was declared that "all writs of certiorari shall be allowed and brought within six months from the time [the] judgment sought to be reversed was rendered." Acts 1855-6, pp. 333, 334. By the act of December 11, 1858, the act of December 29, 1838, was so amended as to require parties desiring writs of certiorari "to apply for the same" within three months after the final determination of the case in the justice's court. Acts 1838, p. 88. The sixteenth section of the act of 1856 appeared in the first code (which took effect on January 1, 1863) as section 2861. Here the words are, "shall be allowed and brought within three months." Several acts on the subject of writs of certiorari and the manner of applying for and issuing them, serving notice, etc., were codified in section 3958 et seq. Section 3965 states that "all writs of certiorari shall be applied for within three months after the final determination of the case," and shall be made returnable to the next superior court sitting not less than twenty days after the issuing of the writ. It will be seen that the section last cited was derived from several acts in reference to the practice in regard to writs of certiorari, and the provision of that section on the subject of time was codified from the act of 1838 as amended by the act of 1858, without reference to the limitation act of 1856; while the section first cited was taken from that act. The code, containing both of these sections, was adopted, and they were carried forward in later codes, appearing in the Codes of 1873 and 1882 as section 2920 and section 4057. On November 12, 1889, an act was approved which amended section 4057 of the Code of 1882, by changing the words, shall be applied for "in three months" after the termination of the case, so as to read "in thirty days." No reference was made to the other section, taken from the act of 1856, which declared that the writ must be "allowed and brought" within three months. In the Code of 1895, for some reason, the words "and brought," appearing in section 2920 of the Code of 1882, were omitted, and the corresponding section of the Code of 1895 (§ 3771) declares that the writ shall be "allowed" within three months; and the same is true of the Code of 1910, § 4365. The other provisions still stood in the Code of 1895 as section 4642, and in the Code of 1910 as section 5188. It will thus be seen that two provisions have long coexisted, one requiring that the writ shall be "applied for" in thirty days; the other that it

shall be "allowed and brought" (or "allowed" in the last two codes) in three months.

Let us now look at some of the decisions on the subject. *Jones v. Smith,* 28 *Ga.* 41, was decided in 1859, while the act of 1856, employing the words "allowed and brought," and the act of 1858, amending the act of 1838 and using the words "applied for," both stood, but had not been codified. It was held, that where a trial took place in a justice's court on November 27, 1857, and the petition for certiorari was filed on May 28, 1858, it was not applied for within six months of the former date. There was no discussion as to the meaning of the words "applied for," but only as to the mode of computing a limitation of six months. Nothing was said as to when the petition was sanctioned. In *Barrett & Carswell* v. *Devine,* 60 *Ga.* 632, decided in 1878, it was held that a writ of certiorari was not "brought," within the meaning of section 2920 of the Code of 1873, until filed in the clerk's office. Warner, C. J., said: "A writ of certiorari is merely the judicial means of enforcing a right, and must not only be allowed to be brought by the sanction of the judge, but must actually be brought within three months after the rendition of the judgment sought to be reversed." This showed that emphasis was laid on the language which required something more than the sanctioning of the writ to be done in three months. See also *Fuller* v. *Arnold,* 64 *Ga.* 599 (3) ; *Shaw* v. *Griffin,* 65 *Ga.* 304; *Western & Atlantic R. Co.* v. *Carson,* 70 *Ga.* 388; *Johnson* v. *State,* 69 *Ga.* 732; *Hilt* v. *Young,* 116 *Ga.* 708, 710 (43 S. E. 76). In *Carson* v. *Mayor etc. of Forsyth,* 97 *Ga.* 258 (22 S. E. 955), decided in August, 1895, it was held: "Under section 4057 of the code, as amended by the act of 1889 (Acts of 1889, p. 84), in order to authorize the issuing of a writ of certiorari, it must be 'applied for' within thirty days from the date of the judgment complained of ; and if this is done, and the sanction obtained, then, under section 2920 of the code, which was not amended by the above-recited act, the petition may be filed at any time within three months from the date of the judgment sought to be reversed." This decision was criticised by counsel for the plaintiff in error. But our recognition of his zeal fails to convince us of the correctness of his legal position. We think that the two lines of legislation, one dealing with the application to the judge for his sanction of the petition, the other with the allowance and

bringing of the writ, including the filing of the proceeding, and the fact that both provisions have been retained in successive codes as separate sections, and thus adopted, is sufficient to indicate that it was not intended that one should repeal the other by implication, and that this furnished a basis for the decision last cited.

2. Another ground of the motion to dismiss the writ of certiorari was that appeal, not certiorari, was the proper remedy, if the defendant in error was dissatisfied with the judgment of the court of ordinary. By article 6, section 4, paragraph 5, of the constitution (Civil Code of 1910, § 6514) it is declared that the superior courts "shall have power to correct errors in inferior judicatories, by writ of certiorari." The writ of certiorari was a common-law writ, and the authority by it to correct errors in inferior judicatories was declared as a constitutional power of the superior courts as early as in the constitution of 1798 (article 3, section 1). In article 6, section 6, paragraph 1, of the constitution of 1877 (Civil Code of 1910, § 6520) it is declared: "The powers of a court of ordinary, and of probate, shall be vested in an ordinary for each county, from whose decision there may be an appeal (or, by consent of parties, without a decision) to the superior court, under regulations prescribed by law." This gives the right of appeal, but does not necessarily exclude the remedy by certiorari. Turning to the statutes, it is provided by section 4999 of the Civil Code of 1910 that "an appeal lies to the superior court from any decision made by the court of ordinary, except an order appointing a temporary administrator." Section 5180 declares: "The writ of certiorari will lie for the correction of errors committed by justices of the peace, corporation courts or councils, or any inferior judicatory, or any person exercising judicial powers, including the ordinary, except in cases touching the probate of wills, granting letters testamentary and of administration." The exception shows that the word "ordinary" was not used in contradistinction to the court of ordinary, because the probate of wills and granting of letters testamentary and of administration were matters appertaining to the jurisdiction of the court of ordinary; and if the previous mention of the ordinary was intended to refer only to his acts otherwise than as a court of ordinary, the exception would have been useless. Our code sometimes employs the word "ordinary" and sometimes the expression "court of ordinary." The ordinary performs cer-

37

tain administrative duties touching county matters, sometimes acts as the judge of the court of ordinary, and sometimes discharges certain special duties imposed on him by law. Whether the statute is dealing with him as the judge of the court of ordinary, or has reference to the person who is ordinary, is often to be determined rather with reference to the subject-matter being considered than by a narrow consideration of the form of words used. Under a former constitution, which declared that the superior courts should have power to correct errors of inferior judicatories by writs of certiorari, and also that there might be an appeal from the court of ordinary (the powers of which were then vested in the inferior court), and an act carrying this latter provision into effect, Hon. T. U. P. Charlton and Hon. R. M. Charlton, presiding in the superior court, were of the opinion that the complaining party had an election to pursue either remedy. *McCaskill* v. *McCaskill, T. U. P. Charlton,* 151; *Roser* v. *Marlow, R. M. Charlton,* 309. In the latter case Judge Charlton said: "There is nothing in the constitution or laws of our State which prohibits a certiorari from being issued because an appeal is given from the same tribunal to which it issues. . . The nature of the two remedies is well understood, and one of the distinctions which has been drawn between them is, that an appeal can only be had when it is expressly given, and a certiorari always lies, unless it has been expressly taken away." As we have seen above, neither the constitution nor the statute expressly or impliedly takes away the right to review rulings of the court of ordinary by writs of certiorari, save in certain specified instances named in the statute. This view is further sustained by section 5181 of the Civil Code of 1910, which provides the method of procedure in order to obtain a writ of certiorari to review a judgment of the court of ordinary. The passing statement made in *Comer* v. *Ross,* 100 *Ga.* 652, 653 (28 S. E. 387), to the effect that appeal "and not certiorari" was the remedy, was obiter dictum, the only question there being whether appeal would lie in that case. So the discussion in *Cunningham* v. *United States Savings & Loan Co.,* 109 *Ga.* 616 (34 S. E. 1024), does not militate against the view here expressed. It was there held that a certain ruling did not furnish any ground of appeal, but was open to attack by certiorari.

In the brief of counsel for the plaintiff in error, it was alleged

that no exceptions were filed in the court of ordinary. But no such point was raised by the motion to dismiss the writ of certiorari. The point there raised was that an appeal could be taken, but not a writ of certiorari. This does not raise the question of proper procedure in order to obtain a writ of certiorari. It is unnecessary to discuss the statutes relating to appeals and writs of certiorari as means of correcting decisions in justices' courts, or the various decisions in regard to them. One who desires to enter on this field of investigation might consult *Toole* v. *Edmondson*, 104 *Ga.* 776, 784 (31 S. E. 25), and the cases there cited.

One or two other grounds of the motion to dismiss the writ of certiorari are not referred to in the brief of counsel for the plaintiffs in error.

3. It was argued that the court erred in sustaining the certiorari and reversing the judgment dismissing the petition to set aside the judgment. A judgment of the court of ordinary discharging an administrator, which has been fraudulently obtained by falsely representing to the ordinary that the applicant has fully discharged his duties as administrator, can be set aside by a proper proceeding for that purpose, instituted in the court rendering it. Civil Code (1910), § 4091. *Davis* v. *Albritton*, 127 *Ga.* 517 (56 S. E. 514, 8 L. R. A. (N. S.) 820, 119 Am. St. R. 352) ; *Singer* v. *Middleton*, 135 *Ga.* 825 (70 S. E. 662) ; *Power* v. *Green*, 139 *Ga.* 64 (76 S. E. 567) ; *Ford* v. *Clark*, 129 *Ga.* 292 (58 S. E. 818). But it was contended that only a party to the proceeding could move to set the judgment aside. Who were parties to the proceeding? The petitioner for the discharge was one. Who were the others? The law does not provide in such a case for naming all of the parties whom it is sought to bind; nor ordinarily require personal service on them. The usual method of service is by' citation duly published. Civil Code (1910), § 3509. If this discharge would in no way affect creditors, it would be unnecessary for them to take any steps to set it aside. But as the grant of the discharge operates as a release from all liability as administrator (Civil Code, 1910, § 4090), it is clear that a creditor can not be so far a party as to be bound by the judgment, and yet not sufficiently a party to object to its rendition or to move to set it aside in a proper case. In accord with this view is section 3218 of the Civil Code of 1910, which declares: "Creditors may attack as fraudulent a judgment

or conveyance, or any other arrangement interfering with their rights, either in law or in equity." In the instant case it was alleged, in the petition to set aside the judgment, that the petitioner obtained a judgment against S. E. Seagraves and Mrs. J. P. Seagraves, and garnished Seagraves as administrator of J. P. Seagraves, deceased; that the garnishee answered, and his answer was traversed; that, while the case was pending in the superior court, the administrator fraudulently procured a discharge by representing to the court of ordinary that he had fully administered the estate and had discharged all of his duties as administrator; and that the plaintiff had no knowledge of the application or judgment of discharge, which was granted on July 7, 1913, until September 30, thereafter. The petition to set aside the judgment was filed October 6, 1913. It was further alleged, that, to the best of the petitioner's information and belief, the administrator was indebted to the judgment debtors, who were insolvent and had no other property on which to levy, and that the petitioner is entitled to judgment against him. The petition was not subject to general demurrer. Nor did such laches on the part of the petitioner appear as to prevent its obtaining relief. The garnishment proceeding was authorized. Civil Code (1910), §§ 4734, 4735. The administrator was not entitled to be discharged while the case was pending in the superior court on a traverse to his answer, and thus affect the rights of the plaintiff. If he fraudulently procured a judgment of discharge, it was subject to be set aside on a proper proceeding therefor; and the plaintiff in the garnishment proceedings, who alleged that it had no knowledge of the application for discharge, or notice of the hearing thereof, until a few days before the proceeding to set aside the discharge was filed, did not show it to be barred by laches. *Davis* v. *Albritton,* 127 *Ga.* 520, supra.

There was no error in the rulings of the superior court.

*Judgment affirmed. All the Justices concur.*