MORRIS *et al. v.* JOHNSTONE *et al.*

No. 7981. April 16, 1931.

*Knight & Patterson,* for plaintiffs in error.

*Austin & Boykin, Weekes & Candler,* and *Slaton & Hopkins,* contra.

HINES, J. Mrs. Annie C. Johnstone, in behalf of herself and such other heirs at law of Charles Minor Morris, deceased, as might come in and be made parties thereto, filed in DeKalb superior court on February 11, 1930, her equitable petition against Charles R. Morris, Lucius M. Morris, and the National Surety Company, in which she alleged that Charles Minor Morris died in DeKalb County, Georgia, on October 6, 1902, leaving as his surviving heirs his widow, five named sons, and six named daughters, petitioner being one of the daughters. In her petition she makes other allegations which appear in the opinion hereinafter. She prayed that the judgment of the ordinary discharging the defendants as administrators be set aside; that the defendant be required to make a fair, full, and complete accounting and settlement of said estate; that the court adjudge the true amount due from the estate and the administrators thereof to her as an heir at law of the deceased; and that she have all other and further meet and equitable relief. The administrators demurred to the petition, upon the grounds, among others, (1) that it did not set up a cause of action; (2) that it shows on its face such laches as to forever bar the plaintiff from the relief prayed; (3) that petitioner is barred by the statute of limitations as against defendants, in that the petition alleges a cause of action, if any, which arose on July 8, 1905, whereas the suit was filed February 11, 1930. On July 19, 1930, the court overruled the demurrer to the petition; and to that judgment the administrators excepted.

The question for decision in this case is whether the plaintiff was barred by the statute of limitations when she instituted the present suit. It is conceded by counsel for the administrators that the applicable statute on this question is section 4359 of the Civil Code of 1910, which provides that "Actions on bonds or other instruments under seal shall be brought within twenty years after the right of action accrues." The plaintiff sues to recover from the administrators the sum of $11,615, which she alleges was due by them to her on her distributive share in the estate of her deceased father on July 8, 1905, with interest from said date. So if no facts appear in the record which will toll the same, petitioner's cause of action was barred under the above statute at the time her suit was instituted. But petitioner insists that the statute of limitations should be tolled by reason of acts of fraud perpetrated upon her by the administrators. So the question arises, does the petition set out acts of fraud perpetrated by the administrators upon petitioner, which would entitle her to have the statute of limitations tolled? The allegations of the petition make a case of gross fraud perpetrated by the administrators upon petitioner. The administrators were appointed on December 1, 1902, and on that date they qualified as such, and gave bond with the National Surety Company as their surety. They continued in office until March 7, 1927, when they were discharged. The defendants made no complete inventory of the estate of their intestate which came into their hands. They filed with the ordinary an inventory of realty of the deceased in DeKalb County, consisting of two tracts of land of the value of $20,000, and of realty of the deceased in Fulton County of the value of $129,300. The only personalty of the deceased inventoried by them was $2,000 in solvent notes and accounts, and $18,000 in doubtful notes and accounts. They failed to inventory two valuable stocks of merchandise owned by the intestate at the time of his death and located in two stores on Decatur Street in Atlanta, which he operated at the time of his death. These stocks of merchandise were of the value of $10,000 or more. They made no inventory of certain live stock and vehicles owned and used by the deceased at the time of his death in connection with said stores and at his home, of the value of $800 or more. They made no inventory or return of the cash of the deceased on hand and in bank at the time of his death. They failed to embrace

in the inventory of the realty of the deceased a tract of land in Fulton County, owned by the deceased at the time of his death, containing 10.13 acres. On May 18, 1903, they sold this tract of land to the Chattahoochee Terminal Railway for a cash consideration of $12,156. They made no return of the proceeds of this sale, and never accounted therefor. In 1903 the administrators sold certain realty of the deceased for $112,956. In 1904 they sold other land of the deceased for $15,250. On July 8, 1905, they sold another tract for $25,500. When this last sale was made the defendants had in hand, or ought to have had in hand, in cash, as acknowledged by their deeds to the purchasers, the sum of $157,706.

On November 6, 1904, the administrators sold the 16-acre home place of the deceased for a cash consideration of $10,500. If the same had been fairly sold, the administrators could have sold the same for $25,000. They arranged with the widow of the intestate to bid in said property, and the same was knocked off to her at the above price. This sale was brought about by fraudulent collusion between the administrators and Mrs. Morris, and was in effect a sale to the administrators themselves. After having thus fraudulently acquired the control of said property, the administrators subdivided a large part thereof into 70 lots, which they sold off from time to time at the price of $1,250 to $3,000 per lot, realizing for themselves a profit of $50,000 or other large sum. On March 18, 1903, the administrators sold the Decatur Street property of the intestate, and procured the widow to bid the same in at said sale, and the same was conveyed to her for $53,000. If the sale had been fairly conducted, it would have brought the sum of $80,000. In 1922 the administrators called a meeting of the heirs of the estate, and at that meeting represented to the heirs that there was left in the estate unadministered and unsold the Decatur Street property and a large part of the 16-acre home place, that these two pieces of valuable property were unincumbered, and that all the debts of the estate had been paid. They proposed to form a corporation for the purpose of taking over said property, and in case any of the heirs did not desire to take stock in the company they would arrange to have their stock taken over and pay any heir who did not desire the stock. The administrators at this meeting concealed from the heirs present that the Decatur Street property had been sold in 1903, and had been subsequently heavily mortgaged; and

they also concealed from petitioner and the other heirs that the home place had been sold in 1904, and that the latter place was mortgaged. In 1923, petitioner was approached by Romnie S. Morris, one of the heirs of the intestate, who came to her in behalf of the administrators, and requested her to sign a receipt which had been prepared and which would show to the ordinary that she was one of the heirs of the estate, and that she had received her part in full, said Morris declaring to her before she signed the same that she would later get still further returns from the Decatur Street property and from the home-place tract, and that the administrators were going on with their proposition to put these properties into a corporation, and would give her part of the stock or arrange to pay her the cash therefor. She was induced to sign this receipt by the previous representations of said administrators and by the representations of said Romnie S. Morris as above set out. At the time she signed said receipt she did not know that the Decatur Street property had been sold in 1903, that the home place had been sold in 1904, that the administrators had failed to inventory and return certain realty and personalty of great value, and that the above property was heavily mortgaged. All these facts the administrators concealed from her.

About the year 1910 the administrators reported to the husband of petitioner that they had paid all the debts of the estate, and that they would soon thereafter be ready to distribute the estate among the heirs. Again in 1910, and for a number of years thereafter until 1922, the administrators promised from time to time to make a final distribution, but from year to year postponed the same upon the plea that they had not yet been able to complete all the details of the administration. The administrators paid to petitioner on her share in said estate $570 in November, 1911, $1,200 about April, 1912, $1,000 in May, 1913, and $250 in April, 1927, after they had been discharged. On August 16, 1923, the administrators represented to the ordinary that they had settled with all the heirs of the deceased except petitioner and Emory H. Morris, and that they had reserved a sufficiency of the property of the estate to settle with them.

On March 30, 1923, the National Surety Company filed with the ordinary its petition alleging that the administrators had filed no returns, and that it could not determine the condition of the

estate. The surety prayed that the ordinary issue an order requiring the administrators to file their report and to substitute a new surety, and that it be relieved from further liability on their bond. On October 31, 1923, the ordinary discharged the surety company from further liability on the bond of the administrators, and a new bond in the sum of $16,000 was executed and filed with the ordinary by the administrators. On June 23, 1926, the administrators filed with the ordinary a paper wherein Emory H. Morris transferred to them his equity in said estate in consideration of $3,000. On January 1, 1927, they filed with the ordinary a paper from Mrs. Alice Murphy, purporting to transfer to them her equity in said estate for $4,000. Thereafter the administrators filed with the ordinary their petition reciting that they had settled with all the heirs, had paid all the debts, and had discharged all their duties as such administrators as required by law, and prayed to be dismissed from said trust. On March 7, 1927, the ordinary passed an order discharging them. Said discharge was procured by a fraud practiced upon the ordinary by the administrators, in that they concealed from the ordinary valuable realty and personalty of the intestate which they had failed to inventory, and they never disclosed to the ordinary that they had received $157,706 as the proceeds of the sale of the realty of the deceased, and falsely and fraudulently represented to said officer that they had settled with all the heirs of the estate, including petitioner. The fraudulent representations made by the administrators to the ordinary, and the concealment by them of the true facts in relation to their acts and doings in the management of the estate, constituted in law and in morals a fraud perpetrated upon the ordinary in order to get said discharge, and if said discharge is allowed to stand it will be a fraud upon petitioner and the other heirs. The administrators procured said discharge by a fraud upon petitioner in order to obtain the signature of petitioner and other heirs to receipts in full for their respective shares; and they fraudulently concealed from petitioner and from other heirs the fact that they had sold and made deeds to the purchasers of all the realty of the estate, not disclosing to them the fact that the sales were made in 1903, 1904, and 1905, and not disclosing the names of the purchasers, the amounts the property brought, and the terms of sale, but falsely and fraudulently represented to them that they still held in the

estate for division among the heirs a large and valuable part of the home place and the Decatur Street property.

Petitioner did not sooner discover the fraud practiced upon her by the administrators, for the following reasons: There existed a fiduciary relation between herself and the administrators, and confidential relations between herself and Charles R. Morris, one of the administrators, in that she followed his advice in respect to her personal affairs not connected with the estate, that she deferred to his advice in such matters, and that her relations with the administrators, who were her brothers, were always pleasant and cordial, and she placed implicit faith and confidence in them, and had such faith in their fidelity that it never occurred to her to question their fairness and square dealing in administering the estate of their father. During a number of years while said estate was in the hands of the administrators, petitioner lived outside of this State and at a distance which limited her intercourse with the administrators, and kept her from being in touch with local events and conditions. In May, 1922, the husband of petitioner at her request wrote to Charles R. Morris for information touching the condition of the estate and the winding up thereof, and in reply this administrator wrote that it would be the greatest pleasure of his life to close out the remainder of the estate just as speedily as possible, and that he trusted that this could be done within 60 days. He wrote that there were some things to be considered before so doing, that he referred in particular to the store property, which was the valuable Decatur Street property, that he had done his utmost for 15 years to sell this property in order that matters might be facilitated, that there were one or two things that could be done with the property, that one was to hold an auction sale of it and sell it for what it would bring, or to divide it among the heirs, that he had never been able to free the estate of all debts, and that he believed they could sell the unsold lots, into which the home place had been divided, without auction and during the summer months. In reply to the question what amount would be coming to petitioner, this administrator wrote that it depended on what the property now on hand would bring. He then promised he would get busy and sell the same.

An administrator occupies a position of the highest trust and confidence to heirs at law; and is required to act in entire good faith

in performing the duties of his trust. 24 C. J. 48 (§ 463) A. The administrator is a trustee, and as such he must exercise the utmost good faith in his administration, and he is not allowed to promote his own personal interest to the injury of the heirs at law. *James* v. *Kelley,* 107 *Ga.* 446, 448 (33 S. E. 425, 73 Am. St. R. 135). If no facts are involved but the simple one of the length of time which had elapsed between the accrual of the action and the institution of the suit, the question whether the action was barred would be one of law; but where there are facts involving fraud and excuses for delay in discovering the same, the question is one of mixed law and fact, and is a question for determination by the jury under proper instructions from the court. *Hickson* v. *Bryan,* 75 *Ga.* 392 (3 b), 397. Where persons sustain towards another a relation of trust and confidence, their silence when they ought to speak, or their failure to disclose what they ought to disclose, is as much a fraud in law as an actual affirmative false representation. Mere silence on their part as to a cause, the facts giving arise to which it is their duty to disclose, amounts to a fraudulent concealment. *American National Bank* v. *Fidelity Co.,* 131 *Ga.* 854, 859 (63 S. E. 622, 21 L. R. A. (N. S.) 962). Concealment per se amounts to actual fraud when from any reason one party has a right to expect full communication of the facts from another. This is a well-settled principle recognized both by the civil and the moral law. *Poullain* v. *Poullain,* 76 *Ga.* 420, 447 (4 S. E. 92). The concealment of a right by one whose duty it is to disclose it prevents the running of the statute of limitations in favor of the party in default. It is a legal fraud. *Hoyle* v. *Jones,* 35 *Ga.* 40 (2), 44 (89 Am. D. 273). If a receipt in full is given by an heir at law to administrators of the estate of a deceased ancestor, in consequence of fraudulent conduct and misrepresentations of the administrators, whereby the heir at law was induced to make the settlement and give the receipt to the administrators, the statute of limitations will run only from the discovery of the fraud. *Stidham* v. *Sims,* 74 *Ga.* 187.

If administrators have been guilty of a fraud by which the plaintiff has been debarred or deterred from her action, the period of limitation shall run only from the time of the discovery of the fraud. Civil Code (1910), § 4380. The fraud here referred to, which will remove the bar of the statute of limitations, must be

such as involves moral turpitude. The allegations of the plaintiff's petition make a case of moral fraud; but in cases of such fraud there must be reasonable diligence on the part of the plaintiff to detect or discover the fraud. Mere ignorance of fraud which, by the use of ordinary diligence, might have been discovered in due time will not suspend the operation of the statute of limitations. *Frost* v. *Arnaud*, 144 *Ga.* 26 (85 S. E. 1028). Do the allegations of the petition show as a matter of law that the plaintiff did not use ordinary diligence to discover the frauds which were perpetrated upon her by the administrators? In the first place, the relation between the plaintiff and the administrators was that of sister and brothers. Again, the relation between the plaintiff and the defendants was a confidential relation. Furthermore, it appears that a confidential relation existed between the plaintiff and one of the administrators in the management of her personal affairs, and that she relied upon his advice in such affairs. It further appears that the plaintiff at various times within the statute of limitations applied to the administrators for information touching the affairs of the estate and for a settlement thereof, when the administrators told her that the estate was not ready for distribution. They informed her that valuable portions of the real estate of the intestate were still in their hands subject to be administered, and that they contemplated forming a corporation to which the real estate would be conveyed, and shares given to the heirs for their interest in this valuable real estate. Under these and other facts appearing in the record we do not think that it can be held as a matter of law that the plaintiff was barred by the statute of limitations from prosecuting the present action. In the circumstances the trial judge properly overruled the demurrer setting up the statute of limitations as a bar to the plaintiff's action. The determination of the question of the negligence of the plaintiff in this matter should be left to the jury to be passed upon under proper instructions from the court.

But there is another reason why we think that the demurrer which raised the question of the statute of limitations was properly overruled. At various times between 1910 and 1922 the administrators promised petitioner to make a final distribution, but from year to year postponed the same upon the plea that they had not been able to complete all the details of the administration.

In November, 1911, they paid to petitioner on her share in the estate $570, in April, 1912, they paid her $1,200, and in 1913 they paid her $1,000. In 1922 the administrators called a meeting of the heirs of the estate, and at that meeting represented to them that there was left in the estate unadministered and unsold the Decatur Street property, that this property was then unincumbered, that all the debts of the estate had then been paid, and that they proposed to form a corporation to which this property and the home place of intestate should be conveyed, and shares therein issued to the heirs at law of the intestate for their shares in the property. Thus in 1922 the administrators represented that they had valuable assets of the estate in their possession which were unadministered and were subject to distribution. In May, 1922, the husband of petitioner wrote to one of the administrators for information touching the winding up of the estate, and the administrator replied that before a final distribution could be made the Decatur Street property would have to be disposed of, that he had been trying for 15 years to dispose of it, that he had never been able to free the estate of debts, and that the lots into which the home place had been divided could be sold during the summer. He promised to get busy and sell the same. On August 16, 1923, the administrators represented to the ordinary that they had settled with all the heirs except petitioner and Emory H. Morris, and that they had reserved a sufficiency of the property of the estate to settle with these heirs. On March 30, 1923, the National Surety Company, which was on the bond of the administrators, applied to the ordinary to require the administrators to make returns, to be relieved from liability on their bond, and that they be required to give a new bond. On October 31, 1923, the surety company by order of the ordinary was discharged from further liability on the bond of the defendants, and a new bond was executed by them for the faithful discharge of their duties as such administrators. On June 23, 1926, the administrators filed with the ordinary a paper showing that Emory H. Morris, one of the heirs, had transferred his equity in the estate to them, and on January 1, 1927, they filed another paper in which Mrs. Alice Murphy, another heir at law, transferred her equity in the estate to them. During the year 1923 Romnie S. Morris approached petitioner in behalf of the administrators and requested her to sign a receipt which would show

to the ordinary that she had received her part in the estate, Morris declaring to her at and before she signed said receipt that she would later get further returns from the Decatur Street property and from the home place; and petitioner was induced to sign the receipt in consequence of the previous representations of the administrators and the above representations of Romnie S. Morris, who acted in behalf of the administrators.

It thus appears that the administrators at the above dates treated the trust which they were administering as still existing; and the present suit was brought within the period of 20 years from the date of each of the above acts of the administrators and from the date of their statements that they were undertaking to wind up the administration of the estate and in which they treated their trust as still existing. So we are of the opinion that by reason of these facts the trial judge did not err in overruling the demurrer to the petition. One of the purposes of this suit is to set aside the judgment of the court of ordinary discharging the administrators, upon the ground that such judgment was obtained by fraud perpetrated upon the ordinary and upon the heirs. A judgment of the court of ordinary discharging administrators may be impeached in that court for irregularity, or in the superior court for fraud. *Jacobs* v. *Pou,* 18 *Ga.* 346; *Pass* v. *Pass,* 98 *Ga.* 791 (25 S. E. 752); *Davis* v. *Albritton,* 127 *Ga.* 517 (56 S. E. 514; 8 L. R. A. (N. S.) 820, 119 Am. St. R. 352); *Ford* v. *Clarke,* 129 *Ga.* 293 (58 S. E. 818); *Singer* v. *Middleton,* 135 *Ga.* 825 (70 S. E. 662); *Seagraves* v. *Powell Co.,* 143 *Ga.* 572 (2) (85 S. E. 760). As a general rule, a judgment of a court of competent jurisdiction can not be collaterally attacked for fraud.. The statute has made an exception in the case of a judgment of discharge procured by an administrator by fraud practiced on the heirs or the ordinary. Civil Code (1910), § 4091; *Knox* v. *Raynor,* 146 *Ga.* 146 (90 S. E. 853).. The superior court in the exercise of its equitable jurisdiction may set aside a judgment of a court of ordinary, upon proper allegation and proof. The party seeking the relief is not compelled to move to set aside the judgment in the court of ordinary. *Lester* v. *Reynolds,* 144 *Ga.* 143 (2), 144 (86 S. E. 321); *Wash* v. *Wash,* 145 *Ga.* 405 (89 S. E. 364). The facts alleged in the petition to impeach the judgment of discharge were sufficient for that purpose,

Other grounds of demurrer are not insisted upon by counsel for the administrators; and we treat them as abandoned.

*Judgment affirmed. All the Justices concur.*